## COMMONWEALTH *vs.* PAUL LOACH.

No. 97-P-1492.

Worcester. September 16, 1998. - February 11, 1999.

Present: PORADA, GILLERMAN, & BECK, JJ.

*Evidence,* Identity, Telephone conversation, Voice identification, Relevancy and materiality, Subsequent misconduct. *Extortion.*

At the trial of a criminal case, sufficient "confirming circumstances" tended to authenticate the identification of the defendant as the person who made a phone call to a testifying witness, and there was no substantial risk of a miscarriage of justice in the judge's admission of the telephone conversation in evidence. [316-317]

At the trial of an indictment for attempted extortion, evidence of damage at the victim's workplace caused by gunshots after the defendant had threatened the victim and before a telephone call to the victim inquiring if he had "learned [his] lesson," was properly admitted to show the meaning of the telephone inquiry and to show the defendant's knowledge and intent, and there was no substantial risk of a miscarriage of justice inasmuch as the evidence of the initial threat was sufficient to warrant the defendant's conviction. [317-318]

At the trial of a criminal case, the judge correctly denied the defendant's motion to dismiss the indictment based on a claim that false or deceptive testimony was presented to the grand jury. [318]

INDICTMENT found and returned in the Superior Court Department on November 14, 1995.

A pretrial motion to dismiss was heard by *Herbert F. Travers, Jr.,* J., and the case was tried before *Thomas E. Connolly,* J.

*John F. Coffey* for the defendant.

*Christopher P. Hodgens,* Assistant District Attorney, for the Commonwealth.

BECK, J. A Superior Court jury found the defendant, Paul Loach, guilty on an indictment charging him with the attempted extortion of Elias Atamian. G. L. c. 265, § 25. The trial judge instructed the jury on both the crime of attempted extortion and the elements of joint venture. On appeal, the defendant argues

that the denial of his motion in limine and the subsequent introduction of evidence of events occurring after the date of the alleged attempted extortion created a substantial risk of a miscarriage of justice. In particular, the defendant claims that Atamian's testimony about a telephone call he received should not have been admitted because the telephone call was not properly authenticated.

1. *Facts.* The jury could have found the following facts from the evidence introduced at trial. On April 11, 1990, Elias Atamian signed a promissory note which required payment of $39,910 plus interest to Dan Doherty by December 31, 1990. Doherty was a regular customer of the car dealership Atamian then owned. The money represented the trade-in value of a Porsche automobile. It is undisputed that neither Atamian nor the dealership ever made any payments on the note. A bank subsequently foreclosed on the dealership. The dealership and Atamian declared bankruptcy, and the dealership closed.

More than two years after the note was due, on the afternoon of January 19, 1993, two men appeared at Superior Isuzu, a car dealership where Atamian was then working as general manager, and asked to talk to Atamian in his office. One, a man later identified as Eugene Rida, was between five feet, eight inches and five feet, ten inches tall and about 200 pounds with "a broad, muscular, stocky build." He was dressed in "a body-fitted silk shirt and . . . a very expensive pair of shoes and slacks" and "quite a bit of gold jewelry." The second man, the defendant, was considerably taller than Rida. He was wearing a leather coat and a cowboy hat.

When Atamian sat down at his desk, Rida sat on the opposite side of the desk. The defendant stood directly behind Rida. Rida pulled out a copy of Atamian's note to Doherty and "said that the note had to be paid, and it had to be paid by Monday." Atamian explained that he had talked to Doherty about his inability to pay. Rida insisted that the money had to be paid by Monday. The defendant "made the same comment[s]," adding that "he didn't care if [Atamian] delivered new cars to Mr. Doherty, but it had to be paid, or something was going to happen." While they initially delivered their message in a "normal" tone of voice, the men "kept repeating their demands" and became more "intimidating, louder, [and] forceful" over a period of fifteen to twenty minutes. There was a "continuous insistence that the money had to be paid, paid in full, and paid

by Monday." Later that evening, as Atamian was on his way home, the rear window of the dealership car he was driving "shattered."

Atamian did not pay the money on the designated Monday. When he arrived at work the following day, January 26, 1993, there were bullet holes in two or three of the large plate glass windows in the Isuzu showroom and in the windshield of four or five late model used cars.

At home that evening, Atamian received a telephone call. The male voice on the other end was muffled. It did not sound like a normal voice, and Atamian did not recognize it. The man asked if Atamian "had learned [his] lesson [and] when [he] was going to pay the money." Atamian became angry and insisted on knowing who was calling. The voice "finally said, 'this is the Indian and I need the money.' "

Two and one-half years later, the defendant gave a statement to a State police officer, which the officer wrote down and the defendant signed, after having been advised of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). The defendant acknowledged that he had visited Atamian with another person, later identified as Rida, whom the defendant said he knew as "Dino" or "Gino," on January 19, 1993, to collect a debt to Doherty. The defendant claimed, however, that he did not hear the other individual threaten Atamian; that he never had any involvement in trying to collect the debt after the visit to the Isuzu dealership; and that he never made any phone calls to Atamian. When asked whether he had a nickname, he said "Yes. They call me Indian." While insisting he did not know Rida, the defendant described Rida as a "shooter" who "always packed a handgun."

2. *The motion in limine.* Prior to trial, the defendant filed a motion in limine seeking to preclude the prosecution from introducing testimony about the shattered rear window, the damage to the Isuzu showroom, and the telephone call. After argument, the trial judge denied the motion "without prejudice" and said he would "deal with it as an evidentiary matter" as the trial progressed. In fact, however, the defendant did not register a timely objection. (Defense counsel objected to an introductory question to Atamian about the damage to the showroom, which the trial judge overruled, suggesting that the objection "goes to the next question." There was no objection to the next question asking what Atamian saw when he arrived at work [on January 26].)

On appeal, the defendant argues that the admission of this testimony, as well as the testimony pertaining to the telephone call, created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996) (unsuccessful motion in limine insufficient to preserve appellate rights where no objection at trial to introduction of evidence). We conclude that there was no such risk because the judge would have been warranted in admitting the evidence even with timely objections.

(a) *The telephone conversation.* "A telephone conversation between a witness and [another] person . . . may be admitted when confirming circumstances tend to authenticate the identity of the other person, even if . . . the witness does not recognize the voice." *Commonwealth* v. *Wojcik*, 43 Mass. App. Ct. 595, 606-607 (1997), quoting from *Commonwealth* v. *Anderson*, 404 Mass. 767, 770 (1989). As in *Wojcik*, we conclude there are sufficient confirming circumstances here. First, although clearly not sufficient by itself, see *Commonwealth* v. *Harris*, 232 Mass. 588, 591 (1919), the caller identified himself by the defendant's nickname, "Indian." See also *Commonwealth* v. *Hartford*, 346 Mass. 482, 487-488 (1963) (self-identification a factor to consider). Second, the timing of the call — on the evening of the day on which Atamian discovered the damage to the showroom and the day after Atamian did not pay the debt that was the subject of the extortion — showed that the caller was a person well acquainted with the attempted extortion. Third, the caller again pressed Atamian "to pay the money" exactly as the defendant had insisted on January 19, less than a week before. Finally, the fact that the caller disguised his voice suggested that Atamian would have recognized the voice without the disguise. There were sufficient confirming circumstances that the defendant made the telephone call to put the evidence before the jury. See Fed.R.Evid. 901(a). See also Fed.R.Evid. 901(b),[1] Advisory Committee's Note (example 6) (although caller's assertion of his identity insufficient evidence of authenticity, content of statements may furnish necessary foundation). "The jury could properly infer that the caller was [the defendant]." *Commonwealth* v. *Wojcik*, 43 Mass. App. Ct. at 607. (While the defendant does not raise the issue, we have reviewed the judge's instruction and conclude that he instructed the jury properly and at length regarding their evaluation of circumstantial evidence.)

---

[1]Proposed Mass.R.Evid. 901(a) and (b) are identical to the Federal rules where relevant here.

Although close, this case is distinguishable from *Commonwealth* v. *Howard*, 42 Mass. App. Ct. 322 (1997), where we found the confirming factors insufficient. *Id.* at 325. In *Howard*, the police officer who received the telephone call in question did not recognize the caller's voice (alleged to be the defendant's) even though the police officer was familiar with the defendant, and the defendant did not turn himself in as the caller had promised.

(b) *Evidence of subsequent events.* The defendant further argues that the evidence of the subsequent damage to the showroom was not relevant because there was no evidence linking the defendant to the damage. Rida and two other men were indicted for the damage to the showroom; the defendant was not. The defendant claims that introduction of the evidence created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We disagree. Admission of other so-called "bad acts," whether prior to or subsequent to the offense charged, rests in the sound discretion of the trial judge. *Commonwealth* v. *Shraiar*, 397 Mass. 16, 26 (1986). Even with a timely objection, we defer to the trial judge's exercise of that discretion absent "palpable error." See *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981) (admission of prior bad acts). There was no such error here.

In his statement to the police regarding his visit to Atamian on January 19, 1993, the defendant claimed that "all [he] said [to Atamian] was, 'make contact with Doherty, and come up with the money quick.' " However, Atamian testified that the defendant told him "something was going to happen" if Atamian did not pay the money. After the subsequent events at the showroom, the telephone caller asked Atamian whether he had "learned [his] lesson." The evidence of the damage to the Isuzu showroom was admissible because it was necessary to explain the meaning of this remark. Cf. *Commonwealth* v. *Jackson*, 384 Mass. 572, 578 (1981) (no abuse of discretion in introduction of evidence that defendant admitted to unrelated crimes when statement unintelligible if references to the unrelated crimes were omitted); *Commonwealth* v. *Connor*, 392 Mass. 838, 852 (1984) (no error in admission of reference to prior incarceration which was "essential to show the defendant's motivation in revealing the location of the bodies, which was 'inextricably intertwined' with the crimes and a necessary part of the Commonwealth's presentation of a full picture of the events in issue").

The subsequent events at the Isuzu dealership and the defendant's knowledge of them were also relevant to the issue of intent — to rebut the defendant's implicit assertion that the visit to Atamian on January 19 did not constitute a "malicious threat . . . with intent to extort money." *Commonwealth* v. *De Vincent*, 358 Mass. 592, 595 (1971). In a prosecution for attempted extortion "the defendant's state of mind is important." *Id.* at 596. See *Commonwealth* v. *Campbell*, 371 Mass. 40, 42-43 (1976) (testimony regarding other crimes admissible to rebut defendant's claim of lack of larcenous intent); *Commonwealth* v. *Shraiar*, 397 Mass. 16, 26 (1986) (evidence of subsequent thefts admissible to rebut defendant's claim that he was going to repay funds to accounts); *Commonwealth* v. *Stewart*, 411 Mass. 345, 354 (1991) (evidence that joint venturer shot and killed a cat relevant to show defendant's knowledge that joint venturer armed and intended to kill victim).

In any case, there was no substantial risk of a miscarriage of justice. As the defendant implicitly acknowledges, the evidence of the meeting on January 19 was sufficient to support the defendant's conviction.

3. *Motion to dismiss.* The judge properly denied the defendant's motion to dismiss the indictment. There was no false or deceptive testimony, see *Commonwealth* v. *Ali*, 43 Mass. App. Ct. 549, 556 (1997), or any other infirmity in the grand jury evidence. The alleged discrepancies between the details of the victim's testimony before a grand jury and his testimony at trial were proper subjects for cross-examination, not grounds for dismissal.

*Judgment affirmed.*