COMMONWEALTH *vs.* PLACIDO SANTIAGO.

No. 00-P-115.

Middlesex. June 6, 2001. - October 2, 2001.

Present: LENK, DOERFER, & COHEN, JJ.

Further appellate review granted, 435 Mass. 1105 (2001).

*Indecent Assault and Battery. Evidence,* Spontaneous utterance, Subsequent misconduct, Fresh complaint.

Discussion of the elements of the excited utterance exception to the hearsay rule. [670-672]

At the trial of an indictment charging indecent assault and battery on a child under the age of fourteen, the judge erred in admitting into evidence, under the excited utterance exception to the hearsay rule, a statement by the mother of the complainant, made to police as the mother's boyfriend, the defendant, was being arrested, regarding what the defendant had told the mother earlier that day concerning his conduct, where the mother had ample time, motive, and opportunity between the time she and the defendant discussed his conduct and the arrest to think about the defendant's situation and to contrive a story in an effort to exonerate him [672-676]; because the statement was inherently quite toxic, and was not one the jury would likely forget, the jury's judgment could not be said with fair assurance not to have been substantially swayed by the error, and therefore, the judge's error in admitting the improper testimony could not be said not to be prejudicial [676-678].

At the trial of an indictment charging indecent assault and battery on a child under the age of fourteen, evidence of the defendant's uncharged bad acts toward the complainant, committed eight years after the charges for which he was on trial, was properly admitted for the limited purpose of showing the defendant's continuing sexual passion for the complainant. [678-680]

At a criminal trial, the admission of testimony from three fresh complaint witnesses did not constitute an impermissible "piling on" of such testimony. [680-682]

INDICTMENT found and returned in the Superior Court Department on April 15, 1998.

The case was tried before *Maria I. Lopez,* J.

*Ronald J. Ranta* for the defendant.

*Rua M. Kelly,* Special Assistant District Attorney (*Mary G.*

*Leary*, Assistant District Attorney, with her) for the Commonwealth.

LENK, J. After trial by jury, the defendant Placido Santiago, also known as Jose Martinez or Angel Burgos, was convicted of indecent assault and battery of a child under the age of fourteen by virtue of having touched her breast with his hand on or about December 13, 1990. The child was the thirteen year old daughter of the defendant's then live-in girlfriend and, later, wife. The defendant was acquitted of the more serious charge of rape of a child. On appeal, the defendant asserts as error that (a) a statement made by the complainant's mother to the police at the time of the defendant's arrest was improperly admitted as an excited utterance; (b) subsequent bad acts of the defendant were improperly admitted in evidence; and (c) there was an excessive "piling on" of fresh complaint testimony.

*Background.* We summarize the evidence in the light most favorable to the Commonwealth, reserving certain details for discussion of the specific issues raised. See *Commonwealth* v. *Fisher*, 433 Mass. 340, 341 (2001).

The complainant came to Massachusetts from Puerto Rico with her mother and two younger brothers when she was eight or nine years old. They lived in a multi-family house in Lawrence. Around October, 1990, when the complainant was thirteen years old, the mother's new boyfriend, the defendant, moved in with them. During that month, the defendant made a sexual advance toward the complainant, by kissing her and touching her breasts. She immediately reported the incident to an uncle who lived upstairs. The uncle told the complainant's mother of this and confronted the defendant, who thereafter moved out. The complainant's mother soon followed him, moving with the complainant and her brothers to live with the defendant in Lowell.

The complainant testified that, at approximately 2:00 A.M. on December 13, 1990, she awoke to find the defendant lying next to her in the bedroom that she shared with her two young brothers. He put his hand over her mouth, threatened to kill her if she screamed, stripped off his bottom clothing and her shorts, touched her breasts, and inserted his penis into her vagina, but it "didn't [go] all the way in." He left the room when finished.

After he did, the complainant testified, she felt wetness all over her vagina, and she cried, tried to sleep, and, upon arising, took a shower and went to school.

Although she did not immediately tell her mother of the assault or confront the defendant about it, the complainant did go that day to see her school guidance counselor, and she told the counselor, in Spanish, what had taken place. The guidance counselor called the complainant's mother and the police. The defendant was present when the mother received the call concerning her daughter's reported rape. After the mother and the police came to the school, the complainant recounted to them the details of the sexual assault, the counselor acting as translator for the police. The counselor later accompanied the complainant and her mother to the hospital.

The defendant came to the hospital while the complainant was undergoing medical examination. Using the school guidance counselor as a translator, a police officer approached the defendant and indicated a desire to speak with him. The defendant was read his Miranda rights in Spanish, and he then told the officer that the complainant had a long-standing crush on him, and had asked him to come to her bedroom that night. He told the police officer that at 2:00 A.M. he had gone as far as the doorway to her bedroom but had not gone in. The defendant was placed in handcuffs and arrested. As the police officer was escorting the defendant out of the hospital, the complainant's mother, who had been watching, ran over to the officer and yelled out in Spanish (which the guidance counselor translated for the police) that the defendant had told her that he "went into [the complainant's] bedroom and kissed her, but . . . only put his finger into her vagina, but did not have intercourse [with the complainant]."

Following this, the complainant lived for a time in foster care and then with her maternal grandmother. The defendant, later joined by the complainant's mother and her sons, defaulted on the pending criminal matter and fled the Commonwealth, using an alias and living first in New York, then Connecticut. At some point, the complainant's mother married the defendant. The grandmother told the complainant of her mother's living arrangements and that the police had dropped the case. Life went

on for the complainant, who later moved to New York, married, and had two daughters, one with a medical problem requiring considerable attention. The complainant visited her mother and brothers on occasion, tolerating the defendant's presence in order to see them. In 1996, the complainant and her husband accepted the mother's offer of a separate apartment in the multi-family home that the mother and the defendant had purchased in Bridgeport, Connecticut. They moved there with their two young daughters for financial reasons and in order to provide better care for the children.

The complainant testified that on January 8, 1998, the defendant knocked on the door to her apartment when she was alone. He put his foot in the doorway when she tried to shut it, and pushed his way in, telling her that he was still in love with her and had been since the first time he saw her, and that he did not want her mother. He touched the complainant's breasts and tried to touch her genitals. The angry complainant successfully rebuffed him and he left. She told her husband, and they reported the incident to the local police. As the defendant was being taken into custody, he said to the complainant in Spanish, "I will hurt you." Thereafter, the complainant made further inquiries in Lowell as to the 1990 assault. The police located the outstanding warrant from the 1990 case on which the defendant had defaulted, and the defendant was returned to Massachusetts to face trial.

*Excited utterance.* The defendant contends that the mother's statement to the police (made as her boyfriend, the defendant, was being arrested) as to what he had told her he had and had not done sexually to her daughter, was improperly admitted in evidence under the spontaneous utterance exception to the hearsay rule. The Commonwealth suggests that the mother's statement was not hearsay because it was not admitted or used for its truth, i.e., it was intended to show only the defendant's consciousness of guilt. At trial, the Commonwealth argued in this regard that the statement suggested that the defendant felt it necessary to make something up to tell his girlfriend, albeit something different from what he later told the police, in order to provide some explanation to her of what had happened. We are not persuaded by this argument, because the statement was

not admitted for a limited purpose, but instead was expressly admitted "substantively." No limiting instructions were requested or given. Moreover, the mother's statement in any event was surely hearsay because it was introduced to prove as true that the defendant had in fact told the complainant's mother something about what he had done, even if not to show that what he told her was itself true.

The trial judge did not reach her decision to admit the statement hastily or without due consideration. The matter was raised by a motion in limine and again at trial, and the judge heard extensive argument over several days. The evidentiary issue was made all the more complex by uncertainty as to whether the complainant's mother would testify at trial. Initially, she was listed as a defense witness and, for some period, had apparently accompanied her husband, the defendant, to court, but when the defense indicated a change of mind in this regard, it emerged that the Commonwealth had failed to make proper service of process on her. Defense counsel proffered, however, that were she called, the complainant's mother would deny having made the statement at issue. Further developments also suggested that the complainant's mother might assert her Fifth Amendment rights, either because of her exposure as a potential accessory to the defendant's acts of sexual abuse or due to false statements she had made on an immigration document. The matter was resolved only to the extent that the complainant's mother was not called to testify and the judge, deeming the mother's statement to the police "sufficiently reliable . . . I think that she wouldn't have made that statement unless he had made that statement to her," ostensibly admitted it as a spontaneous utterance.

Under that exception to the hearsay rule, " 'a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event.' . . . Such statements are admissible because they are made in circumstances rendering them 'particularly trustworthy.' . . . '[T]he statements need not be strictly contemporaneous with the exciting cause.' " *Commonwealth* v. *Marshall*, 434 Mass. 358, 363 (2001) (citations omitted). A statement may be

deemed spontaneous, even if not made at a time strictly contemporaneous with the exciting cause, if "made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability." *Commonwealth* v. *Nunes*, 430 Mass. 1, 4 (1999), quoting from *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990).

We look, then, to see whether there was an exciting event, whether the declarant displayed a sufficient degree of excitement, whether the statement made by the declarant tends to characterize or explain the underlying event, and whether the declarant was "capable of 'reflecting sufficiently on the incident to contrive a false story.' " *Commonwealth* v. *Marshall, supra* at 364, quoting from *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994).

The parties suggest that the relevant exciting or startling event was the defendant's arrest, which occurred in the declarant's presence. Certainly, if the nocturnal occurrences of December 13, 1990, were said to have constituted the startling event, the statement concerning it uttered many hours later, by one who had not been there, would not qualify as a spontaneous utterance. To be sure, the case law has significantly "stretch[ed] the boundaries of the literal [spontaneous utterance] exception," Siegel, Timing Isn't Everything: Massachusetts' Expansion of the Excited Utterance Exception in Severe Criminal Cases, 79 B.U. L. Rev. 1241, 1242 (1999), and we no longer require that an exciting event implicate, for example, physical injury to the declarant. The arrest of a spouse, witnessed by the declarant spouse, has in certain circumstances constituted the requisite exciting event. See *Commonwealth* v. *Zagranski*, 408 Mass. at 286 ("The underlying [exciting] event was not the murder. It was the declarant's discovery of her handcuffed husband under arrest for murder in the kitchen of her home"); *Commonwealth* v. *Lawson*, 46 Mass. App. Ct. 627, 630 (1999).

The declarant must also display a sufficient degree of excitement. For example, in *Commonwealth* v. *Zagranski, supra* at 284-285, the wife was "very excited[]," "very agitated," and shouting "Where's the body?" In *Commonwealth* v. *Lawson, supra* at 630, the wife was "upset and crying." In *Com-*

monwealth v. *Marshall,* 434 Mass. at 364, the declarant was "visibly 'upset,' 'crying,' and 'nervous,' " and in *Commonwealth* v. *Nunes,* 430 Mass. at 3, the declarant "was trembling, her eyes were wide open, and she had a panicked expression on her face." See and compare *Commonwealth* v. *Whelton,* 428 Mass. 24, 27 (1998); *Commonwealth* v. *Hardy,* 47 Mass. App. Ct. 679, 685 (1999). Here, the officer testified that the complainant's mother was "very upset and agitated" when the defendant was arrested, "more upset tha[n] at any point prior," and the guidance counselor observed that she seemed worried about the defendant.

Assuming that the first two factors have been satisfied, however roughly, we look next to see whether the statement that the complainant's mother made tends to "qualify, characterize and explain the underlying event." *Commonwealth* v. *Crawford,* 417 Mass. 358, 362 (1994), quoting from *Blake* v. *Springfield St. Ry.,* 6 Mass. App. Ct. 553, 556 (1978). It is at this point that the statement at issue begins to seem at "sixes and sevens" with the hearsay exception under which it was admitted. Ordinarily, the purportedly spontaneous or excited utterance relates in some rather direct fashion to the exciting event that precipitated it.[1] Here, however, the mother's statement was precipitated by the defendant's arrest, yet it appears primarily to concern not the arrest but an event prior to the arrest, i.e., the sexual assault of the night before. What the declarant said at the time of the arrest appears to relate to the arrest only insofar as it suggests that, to the declarant, the arrest seemed unwarranted.

---

[1] See *Commonwealth* v. *Hampton,* 351 Mass. 447, 449 (1966) (bleeding husband's statement, "Call the police. My wife stabbed me," moments after argument was admitted as excited utterance); *Commonwealth* v. *Brown,* 413 Mass. 693, 695-696 (1992) (child complainant's responses to question of who hurt her, made hours after child had been immersed by defendant in bathtub of scalding water, admissible as spontaneous utterance); *Commonwealth* v. *Grant,* 418 Mass. 76, 82 (1994) (after having been shot in arm and witnessing boyfriend get shot, declarant's statement to police that defendant had shot both boyfriend and herself was admissible as excited utterance); *Commonwealth* v. *Nunes,* 430 Mass. at 3 (witness permitted to testify that seconds after declarant spoke with her husband, she was trembling and said that her husband threatened to kill her because she was having affair); *Commonwealth* v. *Alvarado,* 36 Mass. App. Ct. 604, 605 (1994) (police officers permitted to testify that, just after argument with defendant, declarant told them that "the defendant hit and bit her in the course of their argument").

That is to say, to the declarant, the defendant appeared not to be guilty of rape and should not be arrested because there had been no penile penetration constituting rape.

We will nonetheless assume, in light of *Commonwealth* v. *Zagranski*, 408 Mass. at 286, that the third factor — that the statement qualify, characterize or explain the underlying event — has been met, however imperfectly, and we turn to the final and, here, decisive criterion: whether the declarant was "capable of 'reflecting sufficiently on the incident to contrive a false story.' " *Commonwealth* v. *Marshall, supra* at 364, quoting from *Commonwealth* v. *Grant*, 418 Mass. at 81. The only Massachusetts case of which we are aware with arguably comparable facts is *Zagranski, supra*, which the trial judge appears to have viewed as controlling. There, immediately after the defendant let the police into his house, they handcuffed him and advised him of his rights. The wife entered the kitchen, asked what was going on, and was told that her husband was under arrest for murder. According to one police officer, she shouted "Murder? Where is the body? Show me the body. Where is the body if there's a murder?"; as related by another officer, she yelled, "Where's the body? Where's the body? I challenge you to tell me where the body is." *Commonwealth* v. *Zagranski*, 408 Mass. at 285-286. In holding that these remarks correctly were determined to be spontaneous utterances, the court observed that

> "[t]he declarant had just been told in the kitchen of her home that her husband was under arrest for murder. There is a strong basis for concluding that her sudden reaction was reliable and not contrived. At this time, the police had not discovered the victim's body in the storage area. A reasonable inference from her remarks is that the defendant had admitted to his wife that he had killed the victim and had hidden the body. . . . The underlying event was . . . the declarant's discovery of her handcuffed husband under arrest for murder in the kitchen of her home. The excitement of that underlying event produced her spontaneous exclamations. The remarks of the defendant's wife tended to characterize and explain her perception of the arrest. In her view, the arrest was unwarranted because she believed the police had not discovered the victim's body."

*Ibid.*

It seems to us that a key difference between the *Zagranski* statements and the one at issue here is that, in *Zagranski*, although apparently aware that her husband had killed someone and hidden the body, the wife appears to have had no prior indication that her husband was at the time actually a murder suspect or faced imminent arrest. Mrs. Zagranski was thus quite startled when she entered her kitchen and found it occupied with police and her handcuffed husband, and she reacted immediately. No comparable element of surprise exists with respect to the complainant's mother.

Here, the mother had received a telephone call earlier that day from the school guidance counselor informing her of her daughter's accusations concerning the defendant. The defendant was present when she received this call and the jury may infer that she and the defendant discussed the accusation at the time. The mother then went to the school and heard her daughter make those accusations in front of the police. The mother thereafter went with her daughter and the guidance counselor to the hospital, where the police were present and where the defendant later joined them all. A significant amount of time had passed from the time that the mother first learned that her boyfriend was a rape suspect to the time that she saw him being arrested. The arrest may have been most unwelcome to her. It may well have seemed unwarranted to her. It may have caused her to become excited. What it should not have been, however, was a surprise.

In these circumstances, unlike in *Zagranski*, the declarant had ample time, opportunity and motive to think about her boyfriend's situation and to contrive a story in an effort, however naive and ill-conceived, to exonerate him. See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 240 (1998); *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 565 (2001). Contrast *Commonwealth* v. *Fuller*, 399 Mass. 678, 683 (1987); *Commonwealth* v. *Grant*, 418 Mass. at 81-82. While it is of course possible that the mother may simply have truthfully blurted out what her boyfriend earlier had told her, it is just as conceivable that the mother constructed a premeditated explanation to use as and when she thought best. Otherwise put, she may never in

fact have had any such conversation with the defendant. This being so, in the circumstances, the statement simply does not exhibit the indicia of solid reliability that is both the hallmark of and the raison d'etre for the excited utterance exception to the hearsay rule. *Zagranski*, where the element of surprise provides the necessary link, does not control the result here.

We reach this conclusion notwithstanding our reluctance to disturb the trial judge's ruling of admissibility, as to which the judge has broad discretion. We are mindful that here, as in *Commonwealth* v. *DiMonte, supra* at 236, "the judge was faced with particularly difficult circumstances in reaching her decision." Other than *Zagranski*, which appears to mark the outermost boundaries of this hearsay exception, there was little precedent of assistance. "In reaching a decision different from hers, we note the exceptionally careful way in which the judge considered this issue . . . ." *Commonwealth* v. *DiMonte, supra* at 237.

Because objection to the admission of this statement was amply lodged, "our inquiry is whether the improper admission of the evidence constituted prejudicial error."[2] *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). The jury acquitted the defendant of rape by natural intercourse, the crime to which the utterance at first glance seems most pertinent. The jury plainly heeded the judge's instructions that penile penetration was requisite and did not improperly substitute digital for penile penetration. The defendant maintains, however, that the erroneous admission of the mother's statement, coupled with the judge's final jury instructions, could have confused the jury and brought about his conviction for assault and battery by virtue of touching the child's breast. The question is a close one.

---

[2]The defendant also asserts that because the declarant did not testify, the statement's admission violated his right to confrontation under article 12 of the Declaration of Rights. We need not consider the defendant's point, or whether he is entitled to the standard of review for preserved constitutional error — harmlessness beyond a reasonable doubt — because we conclude that admission of the statement meets the more demanding nonconstitutional standard generally applied to evidentiary rulings — prejudicial error. See *Commonwealth* v. *Esteves*, 429 Mass. 636, 639 & n.4 (1999); *Commonwealth* v. *Martinez*, 431 Mass. 168, 176 & n.7 (2000); *Commonwealth* v. *Perry*, 432 Mass. 214, 236 n.16 (2000); *Commonwealth* v. *Cyr*, 433 Mass. 617, 624 (2001).

The jury instruction to which the defendant alludes was a legally correct instruction,[3] to which no objection was made, as to the elements of indecent assault and battery on a child under the age of fourteen. In explaining the element of indecency, the judge accurately instructed that an assault and battery is indecent "if it involves touching portions of the anatomy commonly thought private, such as a person's genital area, or the breasts of a female." The defendant's point is that the girlfriend's statement regarding digital penetration, i.e., touching of genitalia, could have been taken as proof of the indecent touching charged in the indictment.

We examine the error, as we must, in the context of the whole trial. *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 588 (1994). Throughout the trial, and again in closing, albeit not within the judge's referenced instruction, the charges against the defendant were made quite plain: rape by penile penetration and indecent assault and battery by touching the breast. The Commonwealth never suggested that the girlfriend's statement proved that digital penetration had occurred. To the contrary, in closing argument, the prosecutor contended that the statement made by the complainant's mother showed that the defendant was a liar who "admit[ted]" a falsehood to his girlfriend and a somewhat different falsehood to the police. Indeed, the prosecutor argued, once the defendant had fled to New York, he "admitted" yet something else to a roommate, stating that he had "slept with" his girlfriend's daughter. That the defendant felt he had to acknowledge having done anything improper, however falsely, itself showed, according to the prosecutor, his consciousness of his own wrongdoing. The prosecutor also argued that the statement reflected poorly on the mother, who consistently took the defendant's part. In addition, there was independent evidence that the defendant had touched the complainant's breasts. The October, 1990, incident, together with the December 13, 1990, events, formed a pattern where the defendant touched the complainant's breasts. The complainant's

---

[3]Although the judge made a correct general statement of law, it would have been preferable in the circumstances not to instruct on genital touching, and thus to reduce any potential for confusing the jury with a reference to uncharged conduct.

testimony that the defendant touched her breast on December 13 was corroborated by fresh complaint testimony as well as by the results of the medical examination at the hospital revealing that the girl's breasts were sore. The defendant's consciousness of guilt was further shown by his flight from the Commonwealth using an assumed name.

Nonetheless, the statement itself is inherently quite toxic, and is not one the jury would likely forget. Regardless of how the Commonwealth intended to and did use it, it was admitted substantively and without limitation on its use. The jury could well have thought it proof that the defendant had kissed and digitally penetrated the complainant on December 13. This piece of evidence could have rendered the complainant's account of events more credible, given the countervailing medical evidence of her intact hymen and the absence of sperm, as well as her own lack of memory as to the defendant's having moved up and down while astride her. Digital penetration could explain the penetration that the thirteen year old felt and thought was penile penetration, and at the same time account for the intact hymen, the absence of ejaculate and the absence of memory as to movement. The jury, using the excited utterance and heeding the instruction on rape, could have concluded both that there was no rape by penile penetration and that the events otherwise took place as the complainant had described. Or, as the defendant also contends, the jury could have been confused and found the indecent touching in the digital penetration. In either event, however, the excited utterance might have affected the outcome. Given this potential, we cannot say with fair assurance that the jury's " 'judgment was not substantially swayed by the error' . . . [and] that the judge's error in admitting the improper testimony was not prejudicial." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) (citations omitted). The conviction for indecent assault and battery on a child under fourteen cannot stand. We review the remaining issues in the event of a new trial.

*Subsequent bad acts.* The defendant claims error in the admission, over objection, of testimony pertaining to the January 8,

1998, incident in Connecticut.[4] The evidence was admitted only for the limited purposes recognized in the cases as appropriate to uncharged bad acts and, whenever it was necessary, the judge gave proper contemporaneous limiting instructions in this regard. The defendant makes no challenge on appeal to the sufficiency or timeliness of the instructions, but contends that the evidence of uncharged acts, committed eight years after the charges for which he was on trial, was irrelevant and unduly prejudicial.

"Admission of other so-called 'bad acts,' whether prior to or subsequent to the offense charged, rests in the sound discretion of the trial judge. . . . Even with a timely objection, we defer to the trial judge's exercise of that discretion absent 'palpable error.' " *Commonwealth* v. *Loach*, 46 Mass. App. Ct. 313, 317 (1999) (citations omitted). Such evidence is "not admissible to show that the defendant has a criminal propensity or is of bad character. . . . However, '[r]elevant evidence is not rendered inadmissible merely because it indicates that the defendant may have committed an offense other than that for which he is being tried.' " *Commonwealth* v. *Robertson*, 408 Mass. 747, 750 (1990), quoting from *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981). The Commonwealth may introduce such evidence for the purpose of proving intent, identity, motive, pattern of operation, or common scheme. See *Commonwealth* v. *Scott*, 408 Mass. 811, 818 (1990). "Where evidence of other crimes, wrongs, or acts is relevant for one of these purposes, the evidence may be admitted if its probative value is not substantially outweighed by any prejudice. . . . Nonetheless, as with all evidence, in order to be admissible the evidence must be relevant to the offense charged." *Commonwealth* v. *Holloway*, 44 Mass. App. Ct. 469, 475 (1998) (citations omitted).

In sexual assault cases, evidence of similar illicit sexual contacts involving the same parties may be used to show a pattern of conduct, intent, and the relationship between a defendant and a complainant. Evidence of such other sexual contacts between the parties may render it not improbable that the sexual act charged may have occurred. See *Commonwealth* v. *Cal-*

---

[4]At argument, defense counsel waived any claim of error as to the admission of the October, 1990, uncharged prior bad acts.

*cagno,* 31 Mass. App. Ct. 25, 26-28 (1991); *Commonwealth* v. *Almeida,* 42 Mass. App. Ct. 607, 615-616 (1997); *Commonwealth* v. *Crimmins,* 46 Mass. App. Ct. 489, 494 (1999). There need not be a continuous, ongoing relationship to admit such evidence. Evidence of similar crimes, "though committed in another place, if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." *Commonwealth* v. *Sosnowski,* 43 Mass. App. Ct. 367, 371 (1997), quoting from *Commonwealth* v. *Barrett,* 418 Mass. 788, 794 (1994). See *Commonwealth* v. *Machado,* 339 Mass. 713, 715 (1959); *Commonwealth* v. *Scullin,* 44 Mass. App. Ct. 9, 15-16 (1997). The Commonwealth contends that the 1998 conduct, both verbal and physical, was properly admitted for the limited purpose of showing the defendant's sexual passion for the complainant. We agree, at least as to the defendant's statements.

The trial judge enjoys considerable discretion in weighing the timeliness, place, character, and probative value of the bad acts, whether such acts occurred before or after the acts for which the defendant is on trial. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 137 (1984); *Commonwealth* v. *Odell,* 34 Mass. App. Ct. 100, 103 (1993). As to the temporal remoteness of the subsequent bad act, "[t]here is no bright-line test." *Commonwealth* v. *Scullin,* 44 Mass. App. Ct. at 16, quoting from *Commonwealth* v. *Calcagno,* 31 Mass. App. Ct. at 27. See *Commonwealth* v. *Kater,* 432 Mass. 404, 416 (2000). Moreover, in the circumstances, we think the passage of time a minor factor in the equation given the defendant's voluntary flight from the Commonwealth in 1990. Given the relevance of the 1998 incident in its verbal aspect to show acknowledged and continuing sexual passion, the relevance of the attack itself to explain the long-delayed prosecution, and the broad discretion afforded to trial judges in making relevancy determinations and determinations as to whether the probative value of relevant evidence outweighs its prejudicial effects, we think that with careful limiting instructions, the admission of the evidence would not be error.

*Fresh complaint testimony.* The defendant assigns as a third claim of error the admission of testimony from four fresh complaint witnesses, viz. the police officer who spoke with the complainant at school (and with the defendant at the hospital); the guidance counselor at the complainant's school; the emergency room nurse who saw the complainant later the same day of December 13, 1990; and a police officer in the Bridgeport, Connecticut, police department. As to the latter witness, however, the record is clear that while the Bridgeport police officer testified as to statements the complainant made in 1998 regarding the 1990 sexual assault, the judge in fact admitted such testimony as evidence of a prior consistent statement of the sexual assault, and not as fresh complaint testimony. There were, then, only three fresh complaint witnesses at trial. The sufficiency and timeliness of the judge's careful limiting instructions as to the fresh complaint testimony are not challenged on appeal.

Because fresh complaint testimony is corroborative, "the judge may exclude needless repetition of the details of the fresh complaints." *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). "We recognize that 'repetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony.' " *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. 37, 42 (1999), quoting from *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 442 (1994). However, "there is no per se rule of how many fresh complaint witnesses may testify." *Commonwealth* v. *Lorenzetti*, *supra* at 42, quoting from *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995). Absent other error, such as failing to give an instruction, giving an improper instruction, or permitting fresh complaint testimony that exceeds the scope or detail of the complainant's testimony, our cases have held fresh complaint testimony from even five witnesses admissible. See *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 444-445, cert. denied, 519 U.S. 1015 (1996); *Commonwealth* v. *Lorenzetti*, *supra* at 42. See and compare *Commonwealth* v. *Swain*, *supra* at 442; *Commonwealth* v. *Trowbridge*, 36 Mass. App. Ct. 734, 744-745

(1994), *S.C.*, 419 Mass. 750 (1995). We discern here no impermissible "piling on" of fresh complaint testimony.

*Judgment reversed.*

*Verdict set aside.*