NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1077                                    Appeals Court

COMMONWEALTH  vs.  MARCOS CENTENO.


No. 13-P-1077.

Essex.       November 10, 2014. - June 25, 2015.

Present:  Rubin, Brown, & Maldonado, JJ.


Rape.  Indecent Assault and Battery.  Assault and Battery.
    Child Abuse.  Evidence, Subsequent misconduct, Expert
    opinion.  Witness, Expert.  Jury and Jurors.  Practice,
    Criminal, Jury and jurors, Conduct of juror, Voir dire.


    Indictments found and returned in the Superior Court
Department on July 23, 2010.

    The cases were tried before Timothy Q. Feeley, J.

    William B. Van Lonkhuyzen for the defendant.
    Marcia H. Slingerland, Assistant District Attorney, for the
Commonwealth.


    BROWN, J.  The defendant was convicted by a jury on four

indictments charging rape of a child, two indictments charging

indecent assault and battery on a child under the age of

fourteen, and one indictment charging assault and battery.[1]

_____

    [1] The four indictments charging rape of a child allege that
the rapes occurred "on diverse dates from and between April 1,

The defendant now appeals, claiming that (1) the judge abused his discretion when he allowed the admission of the defendant's subsequent misconduct (subsequent bad acts) in evidence; (2) the judge erred in denying a motion for a required finding of not guilty on the indictment charging penile-vaginal rape, (3) the judge abused his discretion in allowing in evidence certain expert testimony that absence of physical injury is not inconsistent with anal rape; and (4) the judge did not abuse his discretion in declining to conduct a voir dire of a sitting juror who was visibly upset.  We affirm.

Facts.  We briefly summarize the facts taken from the evidence presented at trial and reserve for later discussion such additional facts as are relevant to each issue raised on appeal.

In 2004, when the victim was eight years old and entering third grade, the defendant moved into the home she shared with her mother and two younger brothers.[2]  The defendant began to sexually assault the victim almost immediately.  The incidents

_____

2004 and February 11, 2008" and consisted of oral rape, digital rape, vaginal-penile rape, and anal rape.  The two indictments charging indecent assault and battery charged "hand on breast" and "hand on genital area" within the same time period as the rape indictments.  The assault and battery indictment alleged that the assault and battery occurred on May 17, 2010.

[2] The victim was born on November 15, 1995, and was sixteen and one-half years old when she testified at trial.

continued unabated and escalated until the defendant left the home in February, 2008.[3]  The victim's mother witnessed part of a single incident.

Although the defendant left the home in February, 2008, the victim's mother took the victim and her other children to visit him.  In this same period, the victim revealed to her aunt that "[the defendant] used to touch" her.[4]  The victim told her aunt not to tell anyone because she "felt embarrassed" and because she thought her mother really liked the defendant and she did not want to make her unhappy.  In addition, she did not think her mother would believe her.

The final incident occurred on May 17, 2010, after the defendant had returned to the household from his two-year hiatus.  In the course of an argument with the victim in a car, the defendant punched the victim repeatedly on the head and neck, leaving a mark on her neck.  Later, at the house, the victim said, "[A]fter everything that he's done to me all those years, he's going to hit me and beat me like that like he did that day."  In response to the remarks the mother asked the

---

[3] The defendant was incarcerated at this time, but the judge excluded the introduction of any evidence of the defendant's two-year incarceration.

[4] Her aunt was only two and one-half or three years older than the victim.  The aunt's reaction, however, did not signal a supportive ear and resulted in the victim feeling "even more embarrassed and kind of closed up."

victim what she was talking about. The mother told the defendant to leave the house, and upon his departure, the victim told her mother "everything."

Shortly after this incident, a cousin of the victim's mother allowed the mother to listen to her telephone conversation with the defendant, unbeknownst to the defendant. The victim's mother testified that she heard her cousin say to the defendant, "You must have done something really bad, because you guys fight all the time, and she's never put you out before." After initially claiming ignorance, the defendant told the mother's cousin that the victim "must have said something to [her mother] about [me] touching her. She must have made something up about [me] touching her."

The defense presented its case through cross-examination of the Commonwealth's witnesses, and through the testimony of the defendant's mother and the victim's aunt. The defense urged the jury to conclude that the victim was not credible because (1) there was no physical evidence to support her claims, (2) it was impossible to perpetrate the abuse she described in such close proximity to other people without it having been detected, and (3) she did not get along with the defendant and fabricated the allegations to get him out of the house.

Discussion. 1. Uncharged subsequent misconduct. After the defendant's pretrial motion to exclude uncharged subsequent

misconduct (subsequent bad acts) was denied and the Commonwealth's motion to allow the introduction of such evidence was allowed in part,[5] the Commonwealth elicited testimony from the victim, over objection, that after the defendant moved back into the home in February, 2010, he again tried to touch or grab her in the chest, "butt," or "private area" whenever she walked by him.  The defendant argues this was evidence improperly admitted.[6]  See Commonwealth v. Loach, 46 Mass. App. Ct. 313, 317 (1999).

While such evidence may not be used to show the defendant's criminal propensity or bad character, "[i]n sexual assault cases, evidence of similar illicit sexual contacts involving the same parties may be used to show a pattern of conduct, intent, and the relationship between a defendant and a complainant. Evidence of such other sexual contacts between the parties may render it not improbable that the sexual act charged may have

---

[5] The judge specifically did not allow the introduction of any incidents during the victim's visits to the defendant while he was incarcerated or at a particular birthday party.

[6] We disagree with the defendant's contention that the case turned solely on the victim's credibility.  Here, the victim's mother observed the defendant engaging in behavior that was consistent with the victim's description of at least some of the sexual assaults, and some of the defendant's statements could fairly be viewed as consciousness of guilt.  Contrast Commonwealth v. Quinn, 469 Mass. 641, 650 (2014) ("implicit vouching" of expert witness constituted prejudicial error, particularly because case "rested almost entirely on the credibility of the emotionally troubled victim").

occurred." Commonwealth v. Santiago, 52 Mass. App. Ct. 667, 679 (2001), S.C., 437 Mass. 620 (2002). See Commonwealth v. Frank, 51 Mass. App. Ct. 19, 23-24 (2001). Even evidence of similar crimes, "though committed in another place, if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." Commonwealth v. Barrett, 418 Mass. 788, 794 (1994), quoting from Commonwealth v. King, 387 Mass. 464, 470 (1982).

Here, the complained-of subsequent misconduct began as soon as the defendant returned to the household. The conduct was remarkably similar to the earlier pattern of the charged sexual assaults and involved the same victim. The evidence of the subsequent bad acts was relevant to show a pattern of conduct and the existence of the defendant's sexual interest in the victim. Moreover, the judge immediately instructed the jury on the limited use of the evidence to show motive, intent, or a pattern of conduct and prohibited the jury from considering it to establish guilt, propensity, or bad character.

Nor is the subsequent misconduct so temporally remote from the charged conduct to preclude its admission where the defendant spent most of the interim period in prison. Commonwealth v. Kater, 432 Mass. 404, 416 (2000). See Walters v. Maass, 45 F.3d 1355, 1357-1358 (9th Cir. 1995) (earlier bad

acts not too remote in time because defendant spent nearly all of intervening period in prison). See and compare Commonwealth v. Sharpe, 454 Mass. 135, 144 (2009). There was no error in the admission of this evidence.

2. Sufficiency of the evidence. The defendant argues that the evidence was insufficient to prove penile-vaginal rape because there was insufficient evidence of penetration. We disagree. The element of penetration can be established by evidence that the defendant's penis touched or came into contact with the victim's vagina, vulva, or labia. See Commonwealth v. Gichel, 48 Mass. App. Ct. 206, 213 (1999).

Here, Jill Cote, a pediatric nurse practitioner, provided a diagram of the female genitalia -- an oval-like shape with an opening in the middle where the vagina was labeled -- as it looks without any sort of manipulation that would reveal more interior anatomy.[7] Cote identified and labeled the labia majora on the diagram. After the victim testified to repeated instances of the defendant lying on top of her and moving his penis up and down on her vagina, "touching her vagina," she was asked to identify the area on the diagram where the defendant's penis touched her. Referring to the diagram, she responded, "[T]he whole picture." The victim's testimony together with the

---

[7] The diagram was admitted in evidence and has been made part of the record on appeal.

diagram establish that the defendant's penis touched the victim's labia and vagina.  The evidence, accordingly, was sufficient to establish the element of penetration.  The judge instructed the jury, without objection, as follows:  "In addition to the vagina, the female genital opening includes the anterior parts known as the vulva and labia.  Penetration into the vagina itself is not required."  See Massachusetts Superior Court Criminal Practice Jury Instructions § 3.4, at 3-39 (Mass. Continuing Legal Educ. 2d ed. 2013).  See also Commonwealth v. Donlan, 436 Mass. 329, 336 (2002) ("element of penetration required for a rape conviction is established by evidence that [the defendant] touched or came into contact with the victim's vagina, vulva, or labia").[8]

---

[8] The defendant cites Commonwealth v. Russell, 470 Mass. 464, 480-493 (2015), to support his argument that there was insufficient evidence to convict the defendant of penile-vaginal rape of a child.  The issue before the court in Russell was a different one.  There the defendant was acquitted of eighteen counts of statutory rape, but convicted of seven counts of the lesser included offense of indecent assault and battery on a child under the age of fourteen.  On appeal, the defendant argued that the jury should not have been instructed on the lesser included offense.  The Supreme Judicial Court stated that while there was sufficient evidence to support a conviction of rape, there was also "a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense."  Id. at 480, quoting from Commonwealth v. Porro, 458 Mass. 526, 536 (2010).  Consequently, the court concluded, the judge did not err in giving the instruction on the lesser included offense.  Here, neither the defendant nor the Commonwealth proposed an instruction on the lesser included offense, and the defendant has not argued that the judge should have given such an instruction sua sponte.  There was sufficient

3. <u>Expert testimony</u>. The defendant argues that because the hypothetical question concerning the effects of anal-penile penetration on a young girl that was posed to Cote assumed specific facts to which the victim had testified, the question and answer invited the jury to conclude that Cote was testifying that the victim had been sexually abused. This argument misses the mark.

"The line between permissible and impermissible opinion testimony in child sexual abuse cases is not easily drawn." <u>Commonwealth</u> v. <u>Richardson</u>, 423 Mass. 180, 186 (1996). Where, as here, there is an "absence of evidence of physical injury, a medical expert may be able to assist the jury by informing them that the lack of such evidence does not necessarily lead to the medical conclusion that the child was not abused." <u>Commonwealth</u> v. <u>Federico</u>, 425 Mass. 844, 851 & n.13 (1997). See <u>Commonwealth</u> v. <u>Hrabak</u>, 440 Mass. 650, 656 (2004).

In <u>Federico</u>, a case similar to that at bar, an expert witness who was a pediatric gynecologist and had not treated either of the two female victims "responded to a series of hypothetical questions." In each case she was asked to "assume certain facts, one of which was vaginal penetration of a girl by an adult male, and another was the absence of physical signs of

_____

evidence presented to support the conviction of penile-vaginal rape.

trauma to the genital area of the girl. The remaining assumed facts (different in each hypothetical question) concerned the ages of the girls, frequency and the timing of intercourse, and the timing of the physical examination of the girls in relation to the most recent act of intercourse. [The pediatric gynecologist] was then asked whether the assumed facts were 'inconsistent' with each other. She opined that the assumed facts were not 'inconsistent.'" Id. at 846, 854-855. The court held that "[t]he jury could not have understood [the pediatric gynecologist's] testimony to mean that the abuse did occur, but only that it was possible that the abuse had occurred." Id. at 852.[9]

Here, the prosecutor posed a question that included information that was identical in all material respects to the questions posed to the pediatric gynecologist in Federico:

> "[A]ssume that for the purposes of this question that a girl approximately ten to twelve years of age was anally penetrated by an adult male penis, and she did not complain of any bleeding or injury, but she did not know if any lubricant was used or not.
>
> "Based on your training and experience, do you have an opinion to [a] reasonable degree of medical certainty as to whether or not those assumed facts are inconsistent?"

---

[9] In Federico, the Supreme Judicial Court also determined that the questions posed to the other medical expert -- the child psychiatrist -- were "deeply flawed" and reversed the convictions on that basis. Id. at 853.

Cote responded, "It is not inconsistent.  It is typical."[10]

Because Cote had conducted a sexual assault examination of the victim, but the judge had excluded the evidence from that examination, Cote presented to the jury as a nontreating medical expert.  Contrast Commonwealth v. Velazquez, 78 Mass. App. Ct. 660, 666-667 (2011) (potential prejudice amplified when witness testifies both as percipient witness and expert).  Moreover, Cote never gave an opinion as to "whether the alleged victim was in fact subjected to sexual abuse."  Federico, supra at 849. See Commonwealth v. Quincy Q., 434 Mass. 859, 872 (2001) (no error where expert described her findings from her physical examination and general findings associated with sexual abuse). In addition, Cote, like the pediatric gynecological expert in Federico, gave an opinion that these facts were not "inconsistent" with abuse, thereby conveying to the jury that it was merely possible the abuse occurred but not that it had occurred.  See Federico, supra at 852.  There was no error here.

4.  Juror voir dire.  The defendant argues that the judge should have granted his request to conduct a voir dire of a juror who became visibly upset during trial.

At the beginning of the fifth day of trial, the judge informed counsel that the court officers had brought to his

_____

[10] The judge struck the portion of Cote's response stating that "[i]t is typical."

attention that there was some personal "discomfort or hostility" among some jurors unrelated to the case. The judge gave the jury a "pep talk on civility and getting along together," noted that jury service was not easy, and encouraged them to be at least professionally courteous with each other. Acknowledging "that there ha[d] been some non-case-related discomfort among one or more of the jurors," the judge further commented that since fourteen of them had been "thrown" into a small room with some "unusually long break periods," it was "understandable that there could be some personal friction." However, he advised, this was "not a basis for excusal [sic], because it doesn't prevent each or any one of [them] from being fair and impartial and doing the job that [they were] sworn to do."

Following the instruction, the prosecutor stated at sidebar that "Juror 13 seems to be sniffling and crying"; the judge agreed.[11] The following day, both the prosecutor and defense counsel sought an inquiry of both jurors. Acknowledging that he had observed that juror 13 was crying as he gave his "little pep talk," the judge ruled in relevant part:

---

[11] On appeal, the defendant characterizes juror 13 as having "tears streaming down her face." Although the defendant's trial counsel described her in the same way, the judge responded that he "didn't see tears streaming down her face, but [he] certainly did see that she was emotional, and [he thought] it was a fair characterization to say that she was crying as [he] gave [his] little pep talk."

"But I did not see the emotion continue. I think it was a passing matter. I made a conscious effort thereafter to observe Juror No. 13 and observed her during the course of the testimony on repeated occasions being attentive. Not being emotional, being attentive, taking notes and looking to be fully engaged."

. . .

"In my view that inquiry is not required in this case and would be a[n] impermissible insertion of the Court into a personal relationship between jurors that I think has resolved itself and will continue to be resolved in a way that will not affect the fairness or impartiality of any juror."

We agree with the Commonwealth that the judge did not abuse his substantial discretion in declining to conduct a voir dire of the juror. Compare Commonwealth v. Connor, 392 Mass. 838, 845 (1984) (when determining whether to discharge deliberating juror, judge not permitted to inquire about "the juror's relationship with his fellow jurors"); Commonwealth v. Keaton, 36 Mass. App. Ct. 81, 87-88 (1994) (judge entitled to use his own observations at trial to assess juror's attentiveness).[12]

Judgments affirmed.

---

[12] The defendant argues that the case of Commonwealth v. McGhee, 470 Mass. 638 (2015), supports his contention that the judge should have conducted a voir dire of juror 13 in this case. His reliance is misplaced. McGhee involves a situation where a juror clearly slept through significant portions of the trial testimony. Under those circumstances, the judge abused his discretion by not conducting a voir dire. Here there was no suggestion that the juror was inattentive. Instead, the juror was momentarily upset, but the judge specifically observed that the situation resolved itself.