NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1262

COMMONWEALTH

vs.

JOSE ANIBAL RODRIGUEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was indicted in the Superior Court on two counts of rape of a child aggravated by age difference, G. L. c. 265, § 23A, and two counts of indecent assault and battery of a child, G. L. c. 265, § 13B. All charges stemmed from the defendant's sexual abuse of his girlfriend's granddaughter when the victim was between five and twelve years old, and each indictment alleged an ongoing pattern of conduct over "divers dates" between 2012 and 2018. Because we discern no abuse of discretion in the judge's admission of bad act evidence of the defendant's uncharged sexual misconduct involving the same victim, and because the evidence was sufficient to prove the

element of penetration as to the indictment alleging anal rape of the victim, we affirm the convictions.

Background.  The indictments for aggravated rape alleged that the defendant put his penis in the victim's vagina (first indictment) and anus (second indictment).  The indictments for indecent assault and battery of a child alleged that the defendant touched the victim's "breasts/chest with his hands" (third indictment) and placed "his hand on her vagina" (fourth indictment).

Before trial, the Commonwealth moved in limine to admit evidence of additional uncharged criminal conduct by the defendant during the period covered by the indictments -- "times when the defendant put his mouth on [the victim's] vagina, his lips on [her] breasts, and touched her lips with his fingers and his mouth" -- to prove "a pattern of conduct and to give the jury a full and accurate picture of the relationship between the defendant and the victim."  Defense counsel objected "for the record," but otherwise indicated that she would "deal with it on cross[-examination]."  Additionally, the Commonwealth filed an amended motion in limine for leave to introduce evidence of one other act -- the defendant's touching of the sleeping victim's leg -- to preemptively "draw the sting" of evidence that the victim initially denied any inappropriate touching when confronted by her grandmother.  After a hearing, the judge

2

allowed the original motion in its entirety, and allowed the amended motion to "rebut any allegation of recent fabrication."

At trial, the victim testified that the defendant touched her "at least once a week" from the time she was five until she was nine or ten,[1] when she first disclosed the abuse. She also testified that "the main" form of abuse was the defendant putting his hands on or in her vagina.

When asked for specific examples of the defendant's abuse, the victim testified to the defendant's having placed his penis in her vagina and "in [her] butt" so that it touched "the hole" on the day of her grandfather's funeral when she was five years old.[2] She also testified that, on another occasion during the time period specified in the indictments, while she was on a grey chair, the defendant put his penis "between [her] underwear and [her] vagina" so it was touching "the outside" of her vagina; she described the defendant's penis as "warm and hard." The victim further stated that the defendant often touched his penis to her vagina when she was on the grey chair[3] and that,

---

[1] All of the sexual abuse the victim testified about took place at her grandmother's home.

[2] Additionally, the victim testified that the defendant did "something else" that day on a grey chair, but she could not recall what he did.

[3] The victim could not estimate the number of times the defendant touched her vagina with his penis, but she testified that "it happened a lot."

less frequently, he put his penis into her vagina while she was on her grandmother's bed or on a purple couch.

Consistent with the judge's ruling on the Commonwealth's motion in limine, the victim was permitted to testify that, on additional occasions, the defendant "licked and flipped [her] nipples[,] . . . kissed [her] . . . on the lips[,] and . . . put his finger in [her] mouth" while she was on the grey chair, and licked her vagina while she was on the purple couch. Furthermore, the victim testified that when she slept over at her grandmother's house, the defendant "would touch [her] leg and [her] thigh" underneath her pants with his hand or arm when she was sleeping.

Defense counsel declined the judge's offer of a contemporaneous limiting instruction to the jury about the proper use of any bad act evidence. Later in the trial, however, as part of her final charge, the judge instructed the jury that they could consider the bad act evidence "solely on the limited issue of pattern of conduct and/or the relationship between the defendant and [the victim]."

Discussion. 1. Bad act evidence. a. Standard of review. "Evidence of a defendant's prior or subsequent bad acts is inadmissible for the purpose of demonstrating the defendant's

4

bad character or propensity to commit the crimes charged." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). See Mass. G. Evid. § 404(b)(1) (2024). Bad act evidence "is admissible for other relevant probative purposes," however. Commonwealth v. Butler, 445 Mass. 568, 574 (2005), quoting Commonwealth v. Cordle, 404 Mass. 733, 744 (1989), S.C., 412 Mass. 172 (1992). See Mass. G. Evid. § 404(b)(2). The "range" of these permissible purposes, Butler, supra, includes the use of bad act evidence to show a "pattern of operation, or common scheme or course of conduct." Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 408 (2022) (quotation omitted). Relatedly, "[i]n sexual assault cases, evidence of similar illicit sexual contacts involving the same parties may be used to show a pattern of conduct, intent, and the relationship between a defendant and a complainant." Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015), quoting Commonwealth v. Santiago, 52 Mass. App. Ct. 667, 679 (2001), S.C., 437 Mass. 620 (2002).

In any case, such bad act evidence is only admissible if "its probative value outweighs the risk of unfair prejudice to the defendant." Commonwealth v. Linenkemper, 104 Mass. App. Ct. 467, 471 (2024) (quotation omitted). See Mass. G. Evid. § 404(b)(2). Whether evidence of uncharged conduct is relevant and probative, and whether the probative value outweighs the risk of unfair prejudice to the defendant, are "matters . . .

5

'entrusted to the trial judge's broad discretion,'" and we will not disturb the judge's determination "'absent palpable error.'" Foreman, 101 Mass. App. Ct. at 401, quoting Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71 (2018).  To the extent that we discern error, we review any preserved challenge for prejudicial error, and any unpreserved challenge for a substantial risk of a miscarriage of justice.  See Crayton, 470 Mass. at 252 (prejudicial error standard); Commonwealth v. Proia, 92 Mass. App. Ct. 824, 828 (2018) (substantial risk standard).

b.  Scope of bad act evidence.  We begin by reframing the defendant's argument to recognize the "continuing course of conduct" theory under which he was indicted.  The indictments in this case alleged that, on "divers dates" between 2012 and 2018, the defendant raped the victim by putting his penis in her vagina and her anus, and committed indecent assault and battery by using his hands to touch her breasts or chest and her vagina. The Commonwealth did not allege any single incident as the basis for any of the four indictments; instead, it contended that the defendant committed the crimes through a continuing pattern of conduct.  By proceeding in this way, in each indictment, the Commonwealth alleged "one criminal act, consisting of a continuing course of conduct" and "encompassing a number of discrete acts."  Commonwealth v. Fan, 490 Mass. 433, 451 (2022) (citations and quotation omitted).  Thus, to the extent the

6

defendant's appellate argument relies on his characterization of the victim's testimony about the defendant's (1) putting his penis in or on the victim's vagina, (2) putting his penis in her anus, (3) touching her breasts with his hands, or (4) touching her vagina with his hands or fingers, as bad act evidence, it fails. Such evidence was within the scope of the four indictments.

c. Relevance and probative value of bad act evidence. We then turn to the testimony that did amount to bad act evidence -- the victim's accounts of the defendant touching her nipples with his mouth, licking her vagina, kissing her on the mouth, putting his finger in her mouth, and touching her leg and thigh while she was sleeping. This evidence provided context for the defendant's relationship with the victim, see Commonwealth v. Sosnowski, 43 Mass. App. Ct. 367, 368, 372 (1997) (evidence of defendant's uncharged sexual conduct with teenaged victim relevant to jury's understanding of origin and development of relationship between defendant and victim), and bore on both the defendant's ongoing sexual interest in the victim, and his willingness to act on that interest. See Centeno, 87 Mass. App. Ct. at 567.

This evidence was thus probative of the fact of the sexual abuse the victim described, see Santiago, 52 Mass. App. Ct. at 679 (as "[e]vidence of . . . other sexual contacts between the

7

parties," bad act evidence had potential to "render it not improbable that the sexual act[s] charged may have occurred"), and served to rebut the defendant's argument that the victim's account of the abuse was merely a fabricated "story." Additionally, to the extent the evidence showed how early in the victim's life the defendant's abuse began, and how the defendant normalized the abuse, it also provided an explanation for the timing of the victim's disclosure, her failure to provide a comprehensive history when she first reported the abuse, and her subsequent uncertainty about the order in which certain events occurred. Therefore, because the evidence was "connected with the facts of the case," Commonwealth v. Samia, 492 Mass. 135, 148 (2023) (quotation omitted), and had a "logical relationship" to the crimes charged, Commonwealth v. Peno, 485 Mass. 378, 386 (2020), quoting Commonwealth v. Facella, 478 Mass. 393, 405 (2017), we discern no abuse of discretion in the judge's implicit conclusion that the evidence was both relevant and probative.

d. Risk of unfair prejudice. We are also unpersuaded that the probative value of the challenged evidence was outweighed by its potential for unfair prejudice based on the quantity of bad act evidence the judge allowed into evidence.

> "When assessing whether the risk of unfair prejudice outweighs the probative value of the challenged evidence, a reviewing court considers, inter alia, (1) whether the

8

trial judge carefully weighed the probative value and prejudicial effect of the evidence to be introduced; (2) whether the judge mitigated the prejudicial effect through proper limiting instructions; (3) whether the challenged evidence was cumulative of other properly admitted evidence, thereby reducing the risk of any additional prejudicial effect; and (4) whether the challenged evidence was so similar to the charged offense that it increased 'the risk of propensity reasoning by the jury.'"

Commonwealth v. MacCormack, 491 Mass. 848, 863 (2023), quoting Commonwealth v. Da Lin Huang, 489 Mass. 162, 174 (2022).

Our review of the transcript of the hearing on the Commonwealth's motions in limine persuades us that the judge in this case "carefully weighed" the probative value of all the bad act evidence against its potential for unfair prejudice, as she was required to do. This is true despite the lack of an explicit statement to that effect. Cf. Samia, 492 Mass. at 148, quoting Commonwealth v. Mahan, 18 Mass. App. Ct. 738, 741 n.1 (1984) (judge's failure to conduct balancing on record "not fatal" because, where defendant objected to bad act evidence, "[s]uch a determination is implicit in the judge's consideration of the tender of, and the objection to, the evidence and the judge's ultimate decision to admit it").

Additionally, the judge provided the jury with proper guidance on the use of the bad act evidence as part of her final instructions. As we have noted, the judge offered a contemporaneous limiting instruction, but the defendant declined

9

it.  There was thus no abuse of discretion in the timing of the instruction the judge gave.  See Facella, 478 Mass. at 402-403.

Moreover, the bad act evidence, while not cumulative of other admissible evidence, was limited in quantity and detail.  The defendant's assertion that "the jury heard more about uncharged acts than they did about the charged offenses" is incorrect, as the overwhelming majority of the conduct described by the victim came within the scope of the indictments.[4]  We therefore discern no risk that the bad act evidence "overwhelmed" the case.  Contrast Commonwealth v. Dwyer, 448 Mass. 122, 129 (2006) (prior bad act evidence overwhelmed evidence of two rape charges where complainant testified "in detail about each of seven uncharged incidents").

Finally, while the evidence of the uncharged sexual conduct did suggest the defendant's ongoing sexual interest in the victim, and may have suggested his propensity to sexually abuse her in other ways, we think this risk was outweighed by the probative value of the evidence, and we are not persuaded that it "could so inflame the jury's passion or sympathy that they would be unable to remain impartial."  Peno, 485 Mass. at 399.

---

[4] The portions of the victim's testimony that the defendant characterizes as "irrelevant and inflammatory" related to her account of the defendant placing his penis against her vagina, and was therefore charged conduct under the first indictment.

10

We thus discern no abuse of the judge's broad discretion in the admission of the bad act evidence. See Foreman, 101 Mass. App. Ct. at 401.

2. Sufficiency of evidence of anal rape. Lastly, the defendant challenges the sufficiency of the evidence as to the anal rape alleged in the second indictment, arguing that the Commonwealth failed to offer evidence of penetration. See Commonwealth v. Nylander, 26 Mass. App. Ct. 784, 791 (1989). We review the denial of a motion for required finding of not guilty de novo. See Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013). In doing so, we ask whether, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Commonwealth v. Arce, 467 Mass. 329, 333 (2014), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "[T]he inferences a jury may draw from the relevant evidence need only be reasonable and possible, not necessary or inescapable." Commonwealth v. Witkowski, 487 Mass. 675, 679 (2021), quoting Commonwealth v. Copeland, 481 Mass. 255, 259-260 (2019).

"Penetration (or intrusion into) the genital or anal opening is required to prove rape." Nylander, 26 Mass. App. Ct. at 791. Here, the victim testified that the defendant "put his penis in [her] butt," and that it touched "the hole." It was

11

"reasonable and possible" for the jury to infer from this evidence that the defendant put his penis in the victim's anal opening, even if that inference was not "inescapable." Witkowski, 487 Mass. at 679.  Accordingly, the evidence of penetration was sufficient to prove rape under G. L. c. 265, § 23A.

Judgments affirmed.

By the Court (Blake, C.J.,
  Shin & Hand, JJ.[5]),

Clerk

Entered:  March 25, 2025.

---

[5] The panelists are listed in order of seniority.