## COMMONWEALTH *vs.* JAMES LAWSON.

No. 97-P-1226.

Worcester. September 10, 1998. - April 9, 1999.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Resisting Arrest. Practice, Criminal,* Instructions to jury. *Intent. Intoxication. Statute,* Construction. *Malicious Injury to Property. Words,* "Knowingly."

At the trial of a complaint for resisting arrest, G. L. c. 268, § 32B, the defendant was entitled to an instruction that his intoxication could be considered by the jury on the issue whether the defendant knew that the persons with whom he was engaged were police officers acting under the color of their authority and that he was preventing or attempting to prevent them from effecting an arrest, and a new trial was required. [628-630]

Evidence at a criminal trial warranted the defendant's conviction of malicious destruction of property [630-631], and no substantial risk of a miscarriage of justice was created by any remarks of the prosecutor in closing argument [631].

COMPLAINT received and sworn to in the Fitchburg Division of the District Court Department on June 3, 1996.

The case was tried before *Patrick A. Fox,* J.

*Todd M. Gornstein* for the defendant.

*Thomas W. Dee,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant appeals from convictions by a District Court jury on complaints charging malicious destruction of property, G. L. c. 266, § 127; disorderly conduct, G. L. c. 272, § 53; and resisting arrest, G. L. c. 268, § 32B.[1] We af-

---

[1] The defendant was found not guilty on a count charging malicious destruction of property arising from his alleged damaging of leg irons after he was arrested.

The defendant initially was sentenced to a one-year committed term in a house of correction on the resisting arrest conviction, later revised to six months, the last three to be served at an alcohol treatment center. A six-month on and after sentence was imposed for the disorderly conduct conviction,

firm the convictions on the charges of destruction of property and disorderly conduct and reverse the resisting arrest conviction.

At trial, the prosecution presented evidence that the defendant had torn down a speed limit sign which was attached to a pole located between the bar in which he earlier had been drinking and an antique store operated by him and his wife. One of the emergency medical technicians who responded to a "man down, possibly intoxicated" call found the defendant "staggering about" outside of the store and smelling of alcohol. The defendant reacted hostilely to the technicians, obscenely telling them to leave and threatening to kill them. When Keith Bourne, a Fitchburg police officer in full uniform, arrived approximately thirty seconds later, he found the defendant on his hands and knees. When the defendant made threats to kill him, Officer Bourne called for back-up and informed the defendant that he was going to be under arrest. Back-up arrived shortly thereafter in the form of three cruisers and four additional officers. The defendant reacted by entering the store and trying to lock the door. Concerned for the safety of a woman and child they observed within the store, two of the officers pushed the door open and one of them directed pepper spray at the defendant. Once inside the store, the officers told the defendant he was under arrest and attempted to handcuff him. The defendant resisted, fighting and flailing his arms. He was subdued only after he and two officers fell to the floor and a third officer had joined in the fray.

1. *Resisting arrest.* The statute in issue, G. L. c. 268, § 32B, was inserted in the General Laws by St. 1995, c. 276, and provides in pertinent part:

> "(a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

suspended for three years, subject to specified conditions of probation. The conviction of malicious destruction of property was filed, but not with the defendant's express permission. Accordingly, we consider the arguments regarding that conviction.

The defendant argues the judge erred in denying his request for a specific intent jury instruction with respect to this crime and essentially that such an instruction would have permitted the jury to consider the effect of his voluntary intoxication and the pepper spray on his ability to form the requisite intent. After instructing the jury that the crime of malicious destruction of property requires proof of specific intent and that, in determining whether the Commonwealth "has proved that the defendant had [the] necessary intent," they "may take into account any evidence of intoxication," the judge, with respect to the charges of disorderly conduct and resisting arrest, expressly stated that "those two offenses . . . are not specific intent crimes but are known in the law as general intent crimes." He further instructed that "[w]ith respect to general intent crimes, intoxication, if you so find, is not a legal defense for a criminal charge. The law takes the view that even if alcohol had to some extent blinded a person's intellect and his passions, nevertheless it is not an excuse for a crime if the person brings it upon himself. A person who is intoxicated has the same responsibility to obey the law as a person who is sober."

In the context of the wording of the resisting arrest statute, any focus upon the concepts of specific and general intent will not likely assist either judicial analysis or a jury and may be a source of confusion for both. See *Commonwealth* v. *Richards*, 363 Mass. 299, 307 n.3 (1973); *Commonwealth* v. *Gunter*, 427 Mass. 259, 268-270 (1998); *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 524 n.6 (1995), *S.C.*, 421 Mass. 610 (1996); *Commonwealth* v. *Sibinich*, 33 Mass App. Ct. 246, 249 nn.1-3 (1992); Model Penal Code § 2.02, comments at 229-236 (1985). We concentrate instead upon the implications of the use of the word "knowingly" in the statute. We view the placement of "knowingly" as introducing a scienter element not only with respect to the prevention of an arrest, but more broadly, with respect to the prevention of an arrest by "a police officer, acting under color of his official authority." In any event, it is clear that proof of knowledge is required.[2] " 'Knowingly' when used in a criminal statute 'commonly imports a perception of the

---

[2]With respect to the issue of knowledge as an element of the crime of resisting arrest, the judge alluded to it only once in his instructions in the form of a recitation of the words of the statute. He did not instruct the jurors that "they must find that such knowledge existed in order to convict." *Commonwealth* v. *Thomas*, 401 Mass. 109, 118 (1987).

facts requisite to make up the crime.' " *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273 (1944), quoting from *Commonwealth* v. *Horsfall,* 213 Mass. 232, 237 (1913). See *Commonwealth* v. *Moore,* 36 Mass. App. Ct. 455, 461 (1994) (the crime of assault and battery on a police officer, G. L. c. 265, § 13D, requires proof that the defendant knew that the victim was a police officer engaged in the performance of his duties).

When proof of knowledge is an element of the crime charged, the defendant's intoxication[3] "bears on the defendant's ability to possess the requisite knowledge of the circumstances in which he acted." *Commonwealth* v. *Andrade,* 422 Mass. 236, 245 (1996), quoting from *Commonwealth* v. *Sama,* 411 Mass. 293, 298 (1991). See *State* v. *Galvin,* 147 Vt. 215, 217 (1986) (in a prosecution for assault against a law enforcement officer "intoxication should be available as a defense to negate the element of knowledge" that the person assaulted is in fact a police officer).

Accordingly, we hold that the defendant was entitled to an instruction that his intoxication could be considered by the jury in determining whether the Commonwealth had proved beyond a reasonable doubt that the defendant both knew that the persons with whom he was engaged were police officers acting under the color of their authority and that he was preventing or attempting to prevent them from effecting an arrest.

2. *Other issues.* The evidence supporting the charge of malicious destruction consisted of Officer Bourne's testimony that he had been approached by several bystanders who told him the defendant had broken the sign; the officer's testimony that the defendant's wife, upset and crying, about a minute after the defendant's arrest, told the officer the defendant had taken the sign down and that the wife handed the sign to the officer; and the officer's testimony on his inspection of the damaged pole. Because the testimony concerning the bystanders was not objected to and the wife's statement properly was admitted as a spontaneous utterance, see *Commonwealth* v. *Zagranski,* 408 Mass. 278, 285 (1990), we conclude there was no reversible error. The defendant's tenuous claim that his wife, in effect, was involuntarily testifying at his trial is raised for the first time in his reply brief and, in any event, is unsupported by relevant

---

[3]The Commonwealth acknowledged at trial that the defendant was drunk, and the judge noted that it was not in dispute "that the defendant may have been intoxicated at the time of this offense with which he is charged."

authority. We, therefore, need not consider it. See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 286 n.4 (1995).

There is no merit in the defendant's claim that his request for funds for psychiatric evaluation should have been approved. His motion was denied prior to trial, without hearing and without prejudice. The judge's notation stated "court clinic to perform evaluation." The defendant took no further action in the trial court and is not now entitled to consideration of this matter on appeal.

Given the strength of the evidence supporting the convictions of property destruction and disorderly conduct, we conclude that the prosecutor's comments in closing argument did not create a substantial risk of a miscarriage of justice.

The judgment on the charge of resisting arrest is reversed, and the verdict is set aside. The judgment on the charge of disorderly conduct is affirmed. The conviction of malicious destruction of property is remanded for sentencing unless the defendant consents to its being placed on file.

*So ordered.*