NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-67                                          Appeals Court

COMMONWEALTH  vs.  TYRIEK BROWN.

No. 16-P-67.

Worcester.      February 6, 2017. - March 31, 2017.

Present:  Cypher, Milkey, & Neyman, JJ.


Firearms.  Evidence, Firearm.  Practice, Criminal, Argument by
    prosecutor.  Words, "Knowingly."


    Indictments found and returned in the Superior Court
Department on December 13, 2013.

    The cases were tried before William F. Sullivan, J.


    Deborah Bates Riordan for the defendant.
    Michelle R. King, Assistant District Attorney, for the
Commonwealth.


    MILKEY, J.  During an inventory search of the car that the

defendant had been driving, a State trooper discovered a loaded

handgun.  Based on this, the defendant was indicted on two

related counts:  unlawful possession of a firearm, and unlawful

possession of a loaded firearm.  See G. L. c. 269, § 10(a) &

(n).  A Superior Court jury convicted him of those charges.[1]  His appeal primarily focuses on a question of law that the Supreme Judicial Court flagged without answering:  "whether, to be convicted of unlawful possession of a loaded firearm, a defendant must know that the firearm he possessed was loaded."  Commonwealth v. Jefferson, 461 Mass. 821, 828 n.7 (2012).  The Commonwealth maintains that proof of such knowledge is not required.  Although we are not unsympathetic to the textual arguments on which the Commonwealth relies, existing case law requires us to conclude that the Commonwealth must prove that the defendant knew that the gun was loaded.  We further conclude that the evidence here was legally insufficient to establish such knowledge, and that the defendant therefore is entitled to a judgment of acquittal on the indictment for unlawfully possessing a loaded firearm.  We otherwise affirm.

Background.  On July 4, 2013, a State trooper stopped the car that the defendant was driving because of an inoperable tail light.  After learning that the defendant's driver's license had been suspended, the trooper placed him in custody.  Although the defendant had two passengers with him, neither possessed a valid

---

[1] The defendant pleaded guilty to operating a motor vehicle with a suspended license, but he raises no appellate issues regarding that conviction.  The jury acquitted him of possession of a firearm with a defaced serial number, and an indictment for possession of ammunition without a firearm identification card was dismissed.

license, and the trooper therefore determined that the car needed to be towed. During an inventory search of the car, the trooper discovered a handgun in the console between the rear passenger seats. There were five bullets in the gun's magazine.

While the defendant was being transported to the police station by a second trooper, he made various statements regarding the gun.[2] He initially stated his belief that the passenger who had been seated in the front seat of the car possessed a license for it (something that was never substantiated). The defendant then stated that he had obtained the gun during an incident at his former girl friend's house prior to the stop. According to him, the former girl friend's sister was waving the gun around during an argument she was having with an unknown man. The defendant stated that he disarmed the sister, and, upon returning to the car, handed the gun to the rear seat passenger (intending to dispose of it later).

Meanwhile, the rear seat passenger was giving a different story to the police. She stated that the gun was hers and that she owned it in order to protect herself (having recently been the victim of a violent crime). She had placed the gun in the car's rear console, she claimed, because it made her purse

---

[2] The defendant had been given Miranda warnings when he had been placed in custody.

heavy. The woman did not testify at the defendant's trial, but her statements about the gun were admitted as statements against penal interest.

At the charge colloquy, the judge indicated that he intended to use the model jury instructions, which did not include an instruction that the Commonwealth had to prove that the defendant knew the gun was loaded. The defendant raised no objection. During their deliberations, the jury themselves honed in on the knowledge issue, asking the judge: "Does the defendant have to know whether the firearm was loaded, or just that he possessed it and it was loaded?" After discussing the matter with counsel,[3] the judge did not answer the jury's question directly, but he reiterated the elements that the Commonwealth had to prove without including among them knowledge that the gun was loaded.[4] The jury found the defendant guilty of

_____

[3] Again, trial counsel did not argue that knowledge that the gun was loaded was an element of the crime.

[4] Specifically, the judge stated:

"In regards to carrying a loaded firearm, the defendant is charged under section 10(a) and 10(n) of Chapter 269 of our General Laws with knowingly possessing a firearm unlawfully. In order to prove the defendant guilty of this offense the Commonwealth must prove the following four things beyond a reasonable doubt:

"Number one, that the defendant possessed and/or had control of a firearm.

unlawful possession of a firearm and of unlawful possession of a loaded firearm.[5]

Discussion. The defendant primarily focuses on the loaded firearm charge. He makes two related arguments: (1) the Commonwealth presented legally insufficient evidence that he knew the gun was loaded, and (2) in any event, the judge's failure to instruct the jury that the Commonwealth had to prove such knowledge created a substantial risk of a miscarriage of justice (entitling him to a new trial). Both arguments depend on whether proof is required that the defendant knew the gun was loaded. We turn to that question, examining first the language

---

"Number two, that what the defendant possessed or had under his control in a vehicle met the legal definition of a firearm.

"Three, that the defendant knew that he possessed a firearm.

"Four, that the ammunition was contained in the weapon or within the feeding device attached to the weapon."

[5] Strictly speaking, because the firearm at issue was inside a vehicle, the defendant could have violated G. L. c. 269, § 10(a), either through "possession" of it or through having it "under his control in [the] vehicle." The indictment was drafted broadly enough to encompass both theories, although the jury instructions focused on "possession." At least in the circumstances of this appeal, nothing turns on any distinction between "possession" and "control." See Commonwealth v. Romero, 464 Mass. 648, 652 n.6 (2013) ("[W]here the defendant is the operator of a motor vehicle in which a firearm is discovered [not on his person], the elements of constructive possession of the firearm are essentially identical to the elements of knowingly having the firearm under one's control in a motor vehicle").

of the statute, the principal source of legislative intent. Commissioner of Correction v. Superior Ct. Dept. of the Trial Ct. for the County of Worcester, 446 Mass. 123, 124 (2006).

1. Whether knowledge is required. Subsections (a) and (n) of G. L. c. 269, § 10, operate in tandem. Subsection 10(a) makes it a crime to "knowingly" possess a firearm outside one's home or place of work without the requisite authority.[6] For purposes of § 10(a), standing alone, it is beside the point whether the firearm was "loaded or unloaded." A violation of that subsection is subject to various sanctions, including a mandatory minimum term of incarceration. If the firearm that was knowingly and unlawfully possessed was loaded, then the defendant is subject to additional jail time under § 10(n).[7]

---

[6] In pertinent part, G. L. c. 269, § 10(a), as appearing in St. 1990, c. 511, § 2, states as follows:

"Whoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded . . . without either: (1) being present in or on his residence or place of business; or [complying with various licensing requirements] shall be punished . . . ."

[7] The full text of G. L. c. 269, § 10(n), inserted by St. 2006, c. 48, § 7, is as follows:

"Whoever violates paragraph (a) or paragraph (c), by means of a loaded firearm, loaded sawed off shotgun or loaded machine gun shall be further punished by imprisonment in the house of correction for not more than 2 1/2 years, which sentence shall begin from and after the expiration of

See Commonwealth v. Dancy, 90 Mass. App. Ct. 703, 705 (2016). Thus, § 10(n) does not set forth a stand-alone crime, but serves as a sentencing enhancement provision that applies when someone violates § 10(a) "by means of a loaded firearm."[8]

In arguing that it can make use of the sentencing enhancement provisions of G. L. c. 269, § 10(n), without proving knowledge that the firearm was loaded, the Commonwealth relies on the fact that § 10(n) does not include any express knowledge requirement, while G. L. c. 269, § 10(a), does.  However, as noted, § 10(n) is not a stand-alone provision, and its import turns on how it interacts with § 10(a).  The operative question is what it means to violate § 10(a) "by means of a loaded firearm."  The Commonwealth asserts that all this means is that the firearm that a defendant knowingly possesses was loaded. Certainly, that interpretation is a plausible one, and it may be the most natural reading of the statutory language.  Adding further support to the Commonwealth's position is the fact that because proving knowledge that a firearm was loaded will often

the sentence for the violation of paragraph (a) or paragraph (c)."
[8] General Laws c. 269, 10(n), was added in 2006.  St. 2006, c. 48, § 7.  At that time, the Legislature also added G. L. c. 269, § 10(o), which defines "loaded" to mean that "ammunition is contained in the weapon or within a feeding device attached thereto."

be quite difficult, requiring such knowledge could render § 10($\underline{n}$) to little effect.[9]

At the same time, a different reading of the statutory text is at least possible. Because G. L. c. 269, § 10($\underline{a}$), on its own already requires that a defendant "knowingly has in his possession . . . a firearm," and G. L. c. 269, § 10($\underline{n}$), serves to incorporate the additional requirement that the firearm be "loaded," the subsections together can be read as requiring that a defendant knowingly has in his possession a loaded firearm.[10] In turn, it is not a leap at all to say that one cannot knowingly possess a loaded firearm without knowing that the firearm is loaded. See Commonwealth v. Lawson, 46 Mass. App. Ct. 627, 629-630 (1999), quoting from Commonwealth v. Altenhaus, 317 Mass. 270, 273 (1944) ("'[k]nowingly' when used in a criminal statute 'commonly imports a perception of the facts

_____

[9] In other contexts, the court has recognized that the difficulty of proving knowledge is a factor that can be considered in determining whether this is required as a matter of statutory construction or constitutional law. See Commonwealth v. Crosscup, 369 Mass. 228, 234-236 (1975) (to prove operation of motor vehicle with suspended license, Commonwealth must prove receipt of notice of suspension, but need not prove actual knowledge of that suspension).

[10] Indeed, at one point during his instructions to the jury, the trial judge himself referred to the loaded firearm indictment using a similar shorthand: "knowingly possessing a loaded firearm."

requisite to make up the crime'").[11]  If that reading of the statutory text is plausible, then it must be accepted under the rule of lenity.  See Commonwealth v. Williamson, 462 Mass. 676, 679 (2012).

In the end, we need not decide whether such a reading of the statutory text is of sufficient plausibility to invoke the rule of lenity, because, as discussed below, that interpretation is otherwise required by existing case law.  Specifically, we conclude that the defendant's proffered interpretation is compelled by the Supreme Judicial Court's decision in Commonwealth v. Johnson, 461 Mass. 44 (2011).  A full understanding of that case cannot be gleaned without examining it against the backdrop of prior judicial interpretations of G. L. c. 269, § 10.  We therefore turn next to reviewing that history.

In Commonwealth v. Boone, 356 Mass. 85 (1969), the Supreme Judicial Court examined an earlier version of G. L. c. 269, § 10, before that section was broken into subsections.  The language at issue there, unlike the language in the current

---

[11] Commonwealth v. Lawson involved a charge under G. L. c. 268, § 32B, in which "[a] person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another."  We held that the scienter element applied not only to the defendant's efforts to prevent arrest, but also to his understanding that the police officer was acting under the color of authority.  46 Mass. App. Ct. at 629.

§ 10(a), did not require the defendant to have "knowingly" possessed the firearm. Nevertheless, the court read such a provision into the statute, saying "[w]e would not feel justified in ruling that knowledge is not necessary where the penalty is so severe." Id. at 87. The court also suggested that reading a knowledge element into the statute had little, if any, practical effect because the Commonwealth already had to prove that the firearm was within the defendant's "control," and "knowledge is necessary to prove control." Ibid.

The court revisited this issue in Commonwealth v. Jackson, 369 Mass. 904 (1976). By that time, the Legislature had revised the statute by placing what had been G. L. c. 269, § 10, into a new subsection, § 10(a), and by adding a minimum mandatory sentence to that subsection. See id. at 907. It had not yet added the express knowledge requirement. The court in Jackson came to the same conclusion it had in Commonwealth v. Boone, interpreting the statute "as requiring, as a necessary element of the offense, proof that the accused knew that he was carrying a firearm." Id. at 916. In fact, the court suggested that this interpretation might be necessary to avoid constitutional concerns. Ibid., citing Lambert v. California, 355 U.S. 225 (1957). See Commonwealth v. Crosscup, 369 Mass. 228, 234-236 (1975) (discussing constitutional limitations on creating strict liability crimes).

In 1990, the Legislature finally added an express knowledge requirement to G. L. c. 269, § 10(a), thus harmonizing the language of that subsection with existing case law. St. 1990, c. 511, § 2. However, the Legislature did not add such a requirement to G. L. c. 269, § 10(h), a subsection that makes it a crime to possess firearms or ammunition without a firearm identification card issued pursuant to G. L. c. 140, § 129C. See Commonwealth v. Johnson, 461 Mass. at 55 n.14 (explaining difference between § 10[a] and § 10[h]). Nevertheless, in subsequently interpreting § 10(h), the court once again read a knowledge requirement into the statute, albeit without discussion.[12] See id. at 53 ("To convict the defendant of unlawful possession of ammunition [pursuant to § 10(h)], the Commonwealth was required to prove that the defendant knowingly possessed ammunition"). Accord Commonwealth v. Jefferson, 461 Mass. at 828 n.7.

Although the court's reading of a knowledge requirement into G. L. c. 269, § 10(h), aligns with its earlier precedent, doing so extends that precedent in two important respects. The

---

[12] In doing so, the court cited only to the statute (which includes no express knowledge requirement) and to the 2009 model jury instructions for the District Court. In pertinent part, the language of that version of the model instructions was the same as the 1988 version, which predates the addition of an express knowledge requirement to G. L. c. 269, § 10(a). See Instruction 5.601 of the Criminal Model Jury Instructions for Use in the District Court (1988).

first is that the court adopted such an interpretation even though the Legislature by this time had included an express knowledge requirement in G. L. c. 269, § 10(a), but declined to do so in § 10(h).  Compare Commonwealth v. Galvin, 388 Mass. 326, 330 (1983) ("[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present" [quotation omitted]).  The second has to do with the fact that, unlike § 10(a), § 10(h) applies not only to firearms but to ammunition as well (whether that ammunition is found inside of a firearm or not).  The court's suggestion in Commonwealth v. Boone, 356 Mass. at 87, that inferring a scienter requirement has little practical effect no longer holds true once that requirement is applied to out-of-sight ammunition contained within a firearm. Put simply, proving knowledge of such ammunition would often be far more difficult than proving possession.

In any event, Commonwealth v. Johnson includes a second holding with direct pertinence to the case before us.  The court specifically concluded that unlawful possession of ammunition pursuant to G. L. c. 269, § 10(h), is a lesser included offense of unlawful possession of a loaded firearm pursuant to G. L. c. 269, § 10(a) & (n).  Commonwealth v. Johnson, 461 Mass. at 52-53.  Because the court in Johnson concluded that possession of ammunition pursuant to § 10(h) has to be "knowing," it

necessarily follows that possession of that ammunition as part of the loaded firearm offense also has to be knowing. Otherwise, § 10(h) would require an element that §§ 10(a) and 10(n) did not, and hence could not be a lesser included offense. See Commonwealth v. Vick, 454 Mass. 418, 431 (2009) (setting forth elements-based test). Thus, although the Supreme Judicial Court, subsequent to Commonwealth v. Johnson, has suggested that whether the Commonwealth must prove knowledge that a firearm is loaded remains an open question, see Commonwealth v. Jefferson, supra, the holding of the earlier case already appears to have closed that door. Put differently, we could not accept the Commonwealth's position in the case before us without holding that Commonwealth v. Johnson -- at least in part -- was wrongly decided, something that would be beyond our power as an intermediate appellate court. Accordingly, we conclude that to be convicted of unlawful possession of a loaded firearm, a defendant must know that the firearm he possessed was loaded.

2. Sufficiency. The question remains whether the Commonwealth presented legally sufficient evidence that the defendant knew that the gun was loaded. We agree with the defendant that it did not. In reaching our conclusion, we are mindful that the Supreme Judicial Court stated, in dicta, that "[w]here, as here, the firearm was a revolver located in a vehicle, a rational jury could infer that those who possessed

the firearm knew that it was loaded with

ammunition." Commonwealth v. Jefferson, supra. However, that

statement was made with respect to a revolver, a type of handgun

that one might be able to tell was loaded merely by looking at

the outside of the gun (because some of the bullets might be

visible in the cylinder). The handgun in the case before us was

a pistol that relied on a magazine to feed bullets into the gun,

and therefore one could not have discerned whether the gun was

loaded merely by looking at it. Under the facts of this case,

we see no basis on which a rational juror could conclude beyond

a reasonable doubt that the defendant knew the gun was loaded.

The Commonwealth has not argued otherwise.[13] The defendant

therefore is entitled to a judgment of acquittal on the

indictment that alleged unlawful possession of a loaded firearm.

3. Closing argument. The defendant makes one argument

that relates to both possession indictments, a claimed error in

the prosecutor's closing argument. Because no objection was

lodged at trial, our review is limited to whether any error

caused a substantial risk of a miscarriage of

justice. Commonwealth v. King, 77 Mass. App. Ct. 194, 202

(2010), S.C., 460 Mass. 80 (2011).

---

[13] In its brief, the Commonwealth defended the sufficiency of the evidence based only on its argument that it need not prove that the defendant knew that the gun was loaded. When pressed on the issue at oral argument, the Commonwealth characterized any proof of such knowledge as "thin."

In his closing argument, the prosecutor addressed what he termed the "elephant in the room," the contention made by the rear seat passenger that the gun was hers. The prosecutor sought to discredit that person's claims by pointing out two inconsistencies between them and other evidence. First, the woman had stated that the gun was fully loaded when, according to a police witness, it was not. Second, the woman had stated that she removed the gun from her purse to place it in the rear seat console even though, according to other evidence, she had no purse with her in the vehicle. The prosecutor suggested that perhaps this woman was trying to cover for the defendant because she was his girl friend.[14] The defendant challenges this last suggestion, arguing that it was based on facts not in evidence.

As an initial matter, we note that the prosecutor did not misstate any evidence; the particular words he used make it clear that he was merely asking the jury to draw an inference from the evidence. Even if such an inference was not reasonable, a question we do not decide, we conclude that any error did not cause a substantial risk of a miscarriage of

---

[14] Specifically, the prosecutor argued:

"Brown said he was going to his ex-girlfriend's house. Was [the rear seat passenger] the new girlfriend? He was going to pick up clothes, suggesting that this was a recent breakup. [The passenger] was waiting in the car. Was she waiting in the car to avoid the ex? The defendant told you what happened, and it certainly is possible that [the passenger] was covering for her boyfriend."

justice.  Notably, the suggestion that the defendant and the rear seat passenger were dating may in fact have helped the defendant as much as it hurt him, in that it provided support for the theory that he could have been covering for her, rather than vice versa.  It was up to the jury to evaluate what reasonable inferences could be drawn from the evidence, and which facts to credit.  We are confident that the jury's verdict would not have been different had the prosecutor not raised the possibility that the two individuals were dating. See Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

Conclusion.  On the indictment charging the defendant with unlawful possession of a loaded firearm, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.  The judgments are otherwise affirmed.

So ordered.