NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-170

COMMONWEALTH

vs.

JOSEPH V. BOUCHER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of indecent assault and battery on a person under fourteen years old (touching of breasts).[1]  On appeal, the defendant contends that the judge erred by admitting bad acts evidence and failing to instruct the jury on the limited purpose for the admission of that evidence.  The defendant also argues that a substantial risk of miscarriage of justice resulted from a misstatement of the law and improper bolstering of the victim's testimony in the prosecutor's opening statement and closing argument.  We affirm.

_____

[1] The jury acquitted the defendant of indecent assault and battery on a person under fourteen years old (touching of buttocks) and indecent assault and battery on a person fourteen years or older (touching of vagina).

Background.  The Commonwealth presented the following evidence.  The victim was born in January 2000.  During the summer of 2011, the victim and her older sister moved into their aunt's house.  The defendant also lived there and was the aunt's boyfriend.  The victim knew the defendant for most of her life and considered him an uncle.

Around November 2011, the defendant began to rub the victim's back and slap her buttocks in front of other people at the house.  This behavior continued until February 2013, when the victim moved out of her aunt's house, despite the victim asking the defendant to stop it.  During this same period, the defendant touched the victim nightly while she was lying in bed. The victim and her sister shared a bedroom, with the victim's bed abutting a window that opened to the front exterior porch. From the porch, the defendant would open the window, place his hand through it, and grope the victim's breasts.  The defendant also frequently stood in an alley behind the house and watched the victim through a window when she showered or used the bathroom.  In response, the victim put a towel over the window or asked her sister to come to the bathroom with her to block the view from the alley.

The victim's best friend stayed overnight at the victim's house almost every other weekend in 2011 and during part of 2012.  She slept in the victim's bedroom.  One night, the friend

2

awoke to the defendant opening the victim's bedroom window and saw him put his hand through it. When she tried to awaken the sleeping victim, the defendant removed his hand and retreated into the house. The friend also saw the defendant looking at her through the bathroom window while she showered.

In August 2014, faced with the prospect of being placed in foster care, the then fourteen year old victim moved back into her aunt's house. She initially slept on the sun porch, which had a locked door. At some point, the victim moved into a bedroom with her sister and infant nephew. The bedroom was different from the one the victim shared with her sister during her previous stay. The victim slept on a mattress next to her sister's bed. The bedroom had no door, only a curtain, and the defendant had to pass through the room to get to the bedroom he shared with the victim's aunt. Every night until the victim moved out of the house, the defendant entered her bedroom, leaned over her as she lay in bed, and touched her breasts and vagina over her clothing. The victim never yelled out or spoke to the defendant, and her sister never woke up during these assaults. The victim left her aunt's house permanently in February 2015.

Discussion. 1. Bad act evidence. The defendant asserts that the admission of bad act evidence and the judge's failure to give, sua sponte, instructions to the jury on the limited

3

purpose of that evidence was reversible error in this case.  We disagree.

a.  Admissibility.  The defendant argues that testimony at trial about his uncharged misconduct was improper because it created an undue risk that jurors might consider it as evidence of his bad character or propensity to engage in criminal sexual acts.  Although the defendant generally objected to the Commonwealth's motion in limine to admit bad act evidence, he did not object during trial to the admission of testimony about his uncharged misconduct.

"[E]vidence of prior bad acts 'is not admissible to show a defendant's bad character or propensity to commit the charged crime.'"  Commonwealth v. Facella, 478 Mass. 393, 403 (2017), quoting Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006).  "[S]uch evidence is admissible when offered for another purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation, so long as its probative value for that purpose is not outweighed by its prejudicial effect."  Commonwealth v. Welch, 487 Mass. 425, 442-443 (2021), quoting Commonwealth v. Hall, 485 Mass. 145, 163 (2020).  "These matters are 'entrusted to the trial judge's broad discretion and are not disturbed absent palpable error.'"  Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71 (2018), quoting

4

Commonwealth v. Keown, 478 Mass. 232, 242 (2017), cert. denied sub nom. Keown v. Massachusetts, 583 U.S. 1139 (2018).

Here, the defendant specifically challenges the testimony of uncharged conduct that the defendant touched the victim's breasts nightly after she moved back to the aunt's house in 2014 (when the victim was fourteen years old), and that he peered at the victim and her friend while they showered or used the bathroom. The evidence that the defendant touched the victim's breasts nightly in 2014 was relevant to show that "the relationship between the defendant and the victim was one of continuous sexual abuse," Childs, 94 Mass. App. Ct. at 71-72 (quotation and citation omitted), when she resided in the aunt's house. It was also probative of the defendant's "pattern of conduct and the existence of the defendant's sexual interest in the victim." Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015). To the extent that peering at the victim and her friend qualified as bad act evidence,[2] it was relevant to show that the defendant had a sexual interest in the victim and a voyeuristic interest in young females. See Commonwealth v. Wallace, 70 Mass. App. Ct. 757, 765 (2007). We therefore

---

[2] As the trial judge noted, the behavior likely fell short of any criminal conduct.

5

conclude that the challenged evidence was not unduly prejudicial and discern no abuse of discretion in its admission at trial.

b. Jury instructions. The defendant also contends that the judge's failure to instruct the jury on the limited purpose of bad act evidence exacerbated the risk of undue prejudice. He asserts that the jury might have confused the charged crime (indecent touching of the victim's breasts when she was under fourteen) with an uncharged crime (indecent touching of the victim's breasts when she was fourteen years of age or older). We disagree.

We begin by noting that, because the defendant did not request any instructions either contemporaneous with the admission of the evidence or during the judge's final instructions to the jury, it was not error for the judge not to instruct the jury on the limited purpose of the bad act evidence. See Commonwealth v. Nascimento-Depina, 496 Mass. 1, 9, cert. denied sub nom. Nascimento-Depina v. Massachusetts, 146 S.Ct. 260 (2025) ("We have never required a judge to give a limiting instruction in the absence of a request for one, and see no reason to create such a rule . . ."). As to the defendant's claim that the jury were confused or misled, we look at the judge's instructions holistically to determine whether they fairly instructed the jury. See Commonwealth v. Richardson, 429 Mass. 182, 185 (1999). Our review is for a

6

substantial risk of miscarriage of justice where the defendant did not object to the judge's instructions.  See Commonwealth v. Desiderio, 491 Mass. 809, 815, 818 (2023).

The judge's final instructions were adequate, particularly with respect to the facts that underpinned each crime.  The judge outlined each crime charged, including the body part alleged to have been touched and the victim's age at the time.[3]  See Commonwealth v. Bryant, 482 Mass. 731, 737-738 (2019) (jury presumed to follow judge's instructions).  Consistent with the jury instructions, each verdict slip delineated the charge, the corresponding body part, and the victim's age.  In addition, there was a clear break in the temporal chain between the events described by the victim before and after she turned fourteen: she moved out of her aunt's house for about eighteen months.  There were also factual distinctions between the victim's description of the assaults that occurred on either side of that break in time.  When she was under fourteen, the victim slept in a room adjacent to the porch and the defendant reached his hand

_____

[3] The transcript of the jury instructions reflects that the judge told the jury that "[t]he second charge is an indecent assault and battery on a person under the age of 15" (emphasis added).  After a review of the audio recording from the trial, the parties informed this court in a joint postargument filing that this was a scrivener's error.  The judge correctly informed the jury that the charge required the victim to be under fourteen years old.

7

in through a window to touch her breasts; when the victim returned to the house after she turned fourteen, she slept in a different bedroom through which the defendant walked to get to his own room. Moreover, the acts for which the defendant was convicted -- putting his hand through the porch window to touch the victim's breasts -- were corroborated, at least in part, by testimony of the victim's friend that she saw the defendant reaching through the window into the bedroom one night.

On this record, we conclude that the jury were fairly instructed on the elements and corresponding acts for each crime charged. There was no substantial risk that the jury were confused or that they convicted the defendant of a crime other than the one with which he was charged. See Desiderio, 491 Mass. at 818.

2. Prosecutor's opening statement and closing argument. Finally, the defendant argues that that the prosecutor made statements in her opening statement and closing argument that misstated the law and improperly bolstered the victim's trial testimony. Because the defendant did not object at trial, our review is "to determine if the statements were error, and, if so, whether they created a substantial risk of a miscarriage of justice." Commonwealth v. Sanchez, 96 Mass. App. Ct. 1, 9 (2019).

8

The defendant contends that it was improper for the prosecutor to refer to the victim as a "child." He asserts that the prosecutor misstated the law to the extent the defendant was charged with indecent assault and battery on a child and, at least as to some of the conduct, the victim was over fourteen years old. This argument takes the prosecutor's statements out of context. We think a fair reading of these fleeting references in both the opening statement and closing argument is that the prosecutor was highlighting the difference in age, status, and power between a fourteen year old girl and a grown man whom she regarded as an uncle. We discern no risk that these statements confused the jury as to the legal status of the victim at the various stages of her interaction with the defendant. Furthermore, as discussed above, the judge gave clear instructions on the legal requirements for each crime, including the distinctions between indecent assault and batteries that occurred before the victim turned fourteen years old versus when she was fourteen years old or older.

The defendant further argues that the prosecutor improperly vouched for the victim's credibility by stating that the victim and her friend "took the stand" to tell the jury what had occurred. Again, the defendant's argument takes the prosecutor's statements out of context. The prosecutor's references to the victim and witness "taking the stand" were

9

shorthand for the fact that they testified; nowhere does the prosecutor argue either witness should be believed <u>because</u> she took the witness stand.  This is a material and meaningful difference because the prosecutor did not impermissibly suggest that the victim and her friend were entitled to greater credibility merely because they were willing to testify.  See <u>Commonwealth</u> v. <u>Helberg</u>, 73 Mass. App. Ct. 175, 179 (2008).

Because we discern no error, there was no risk that either the prosecutor's opening statement or closing argument caused a miscarriage of justice.  See <u>Sanchez</u>, 96 Mass. App. Ct. at 9-11.

<u>Judgment affirmed</u>.

By the Court (Desmond,
Hershfang & Brennan, JJ.[4]),

Clerk

Entered:  May 18, 2026.

---

[4] The panelists are listed in order of seniority.